1  **SARA M. PELOQUIN**
   Federal Defenders of San Diego, Inc.
2  California State Bar No. 254945
   225 Broadway, Suite 900
3  San Diego, CA 92101-5030
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: sara_peloquin@fd.org

5  Attorneys for Mrs. Pozo-Campillo

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                  **(HONORABLE THOMAS J. WHELAN)**

11  UNITED STATES OF AMERICA,           )   CASE NO.: 08CR0805-W
                                        )
12                     Plaintiff,       )   DATE: MAY 5, 2008
                                        )   TIME:  2:00 P.M.
13  v.                                  )
                                        )   MEMORANDUM OF POINTS AND
14  YLIANA POZO-CAMPILLO,               )   AUTHORITIES IN SUPPORT OF
                                        )   MRS. POZO-CAMPILLO'S MOTIONS
15                     Defendant.       )
    _____)   _____

16

17                    <u>**STATEMENT OF FACTS**</u>[1]

18       On March 6, 2008, at approximately 8:45 a.m., Mrs. Pozo-Campillo entered the United States at the

19  Calexico West Port of Entry as the driver and sole occupant of a Chevrolet Venture Mini-Van.  At primary

20  inspection the officer noted that the roof interior was lower than usual.  While Mrs. Pozo-Campillo was

21  seated in the vehicle, the primary officer tapped the interior roof, and measured the distance between the

22  interior and exterior of the vehicle roof.  He then referred the vehicle to secondary inspection.  At secondary

23  inspection, Mrs. Pozo-Campillo was questioned about the ownership of the vehicle.  She was asked to exit

24  the vehicle while a more detailed inspection took place.  A narcotics detector dog alerted in the rear seat of

25  the interior of the vehicle.  Eight packages of marijuana were found concealed in the interior roof of the

26  _____

27       [1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced
    discovery that the defense continues to investigate.  Mrs. Pozo-Campillo does not admit the accuracy of this
28  information and reserves the right to challenge it at any time.

1   vehicle.  Mrs. Pozo-Campillo was then taken to a private room for a pat down.  No contraband was found

2   on Mrs. Pozo-Campillo's person.

3       Agents advised Mrs. Pozo-Campillo of her Miranda rights at approximately 11:07 a.m., and she

4   allegedly waived them.  The videotaped interrogation lasted one approximately one hour and sixteen

5   minutes.  She denied knowledge of the presence of marijuana in the car.  The agents searched Mrs. Pozo-

6   Campillo's cellular phone and Nextel Radio without her permission, or a warrant.

7       The January 2007 Grand Jury returned a two count indictment against Mrs. Pozo-Campillo, charging

8   her with Importation of Marijuana, in violation of 21 U.S.C. §§ 952 and 960, and, Possession of Marijuana

9   with Intent to Distribute, in violation of 21 U.S.C. § 841.

10                                          **I.**

11  **THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE 21 U.S.C. §§ 841 AND 960**
    **ARE FACIALLY UNCONSTITUTIONAL; ALTERNATIVELY, THE COURT SHOULD**
12  **REQUIRE THE GOVERNMENT TO PROVE THAT MRS. POZO-CAMPILLO  KNEW THE**
    **QUANTITY AND TYPE OF CONTROLLED SUBSTANCE THAT HE ALLEGEDLY**
13                                      **POSSESSED**

14      As the Court is fully aware of the issues in this context, Mrs. Pozo-Campillo will be brief (but will

15  submit further briefing if the Court would like).  First, the indictment should be dismissed because sections

16  841 and 960 of Title 21 are facially unconstitutional as they require a judge, rather than a jury, to determine

17  the weight and quantity of drug involved, which in turn determines the maximum (and minimum mandatory)

18  sentence.  Second, if the Court disagrees with this, the government must establish *mens rea* (*i.e.*, knowledge)

19  with respect to drug type and quantity.  Given this, the indictment must be dismissed because the

20  government likely failed to instruct the grand jury accordingly.  Mrs. Pozo-Campillo requests that the Court

21  compel production of the grand jury transcripts, pursuant to Rule 6(e)(3)(E)(ii), with respect to this motion.

22                                          **II.**

23         **THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE**
    **INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL**
24              **OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS*.**

25  **A.    Introduction**

26      The indictment in the instant case was returned by the January 2007 grand jury.  That grand jury was

27  instructed by the Honorable Larry A. Burns, United States District Court Judge on January 11, 2007.  See

28  Reporter's Partial Transcript of the Proceedings, dated January 11, 2007, a copy of which is attached hereto

1  as Exhibit A. Judge Burns' instructions deviate from the instructions at issue in the major Ninth Circuit

2  cases challenging a form grand jury instruction previously given in this district in several ways.[2]

3  After repeatedly emphasizing to the grand jurors that probable cause determination was their sole

4  responsibility, see Ex. A at 3, 3-4, 5,[3] Judge Burns instructed the grand jurors that they were forbidden "from

5  judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a

6  federal law or should not be a federal law designating certain activity [as] criminal is not up to you." See

7  id. at 8. The instructions go beyond that, however, and tell the grand jurors that, should "you disagree with

8  that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even

9  though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence may

10 be insufficient.'" See id. at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict

11 because the grand jurors disagree with a proposed prosecution.

12 Immediately before limiting the grand jurors' powers in the way just described, Judge Burns referred

13 to an instance in the grand juror selection process in which he excused three potential jurors. See id. at 8.

14     I've gone over this with a couple of people. You understood from the questions and answers
        that a couple of people were excused, I think three in this case, because they could not adhere
15     to the principle that I'm about to tell you.

16 Id. That "principle" was Judge Burns' discussion of the grand jurors' inability to give effect to their

17 disagreement with Congress. See id. at 8-9. Thus, Judge Burns not only instructed the grand jurors on his

18 view of their discretion; he enforced that view on pain of being excused from service as a grand juror.

19 In addition to his instructions on the authority to choose not to indict, Judge Burns also assured the

20 grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. See

21 id. at 20.[4]

22     Now, again, this emphasizes the difference between the function of the grand jury and the
        trial jury. You're all about probable cause. If you think that there's evidence out there that
23

24     [2]  See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v.
25 Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas
   II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v.
26 Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).

27     [3]  See also id. at 20 ("You're all about probable cause.").

28     [4]  These instructions were provided in the midst of several comments that praised the United States
   attorney's office and prosecutors in general.

3                                                   07CR1311-DMS

1   might cause you to say "well, I don't think probable cause exists," then it's incumbent upon
2   you to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are*
    *duty-bound to present evidence that cuts against what they may be asking you to do if they're*
3   *aware of that evidence.*

4   Id. (emphasis added).[5]  The district court later returned to the notion of the prosecutors and their duties,

5   advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will

6   be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you." See id. at 27.

7        This motion follows.

8   **B.    *Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the**
    **Grand Jury.**
9

10       The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to

11  grand jurors in the Southern District of California.  See Navarro-Vargas II, 408 F.3d 1184.  While the Ninth

12  Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly formalistic

13  approach[6] to the problems posed by the instructions, endorsed many of the substantive arguments raised by

14  the defendants in those cases.  The district court's instructions cannot be reconciled with the role of the grand

15  jury as set forth in Navarro-Vargas II.

16       For instance, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas

17  II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in

18  deciding whether a particular prosecution shall be instituted or followed up, performs much the same

19  function as a grand jury.'"  Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478,

20  510 (1978)).  Accord Navarro-Vargas I, 367 F.3d at 900 (Kozinski, J., dissenting) (The grand jury's

21  discretion in this regard "is most accurately described as prosecutorial.").  See also Navarro-Vargas II, 408

22  F.3d at 1213 (Hawkins, J., dissenting).  It recognizes that the prosecutor is not obligated to proceed on any

23  indictment or presentment returned by a grand jury, id., but also that "the grand jury has no obligation to

24

25       [5]  The "in most instances" language suggests that there may be some limit on this principle.  Again,
26  counsel has ordered the full transcript, and it will likely resolve the question posed in the instant footnote.

27       [6]  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority
    because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible
28  'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

1  prepare a presentment or to return an indictment drafted by the prosecutor." Id. See Niki Kuckes, The

2  Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J.

3  1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute

4  of grand jury review from the perspective of those who insisted that a grand jury clause be included in the

5  Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

6      Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth

7  in Vasquez v. Hillery, 474 U.S. 254 (1986).  See id.

8          The grand jury thus determines not only whether probable cause exists, but also whether to
           "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps
9          most significant of all, a capital offense or a non-capital offense -- all on the basis of the
           same facts.  And, significantly, the grand jury may refuse to return an indictment even
10         "'where a conviction can be obtained.'"

11  Id. (quoting Vasquez, 474 U.S. at 263).  The Supreme Court has itself reaffirmed Vasquez's description of

12  the grand jury's attributes in  Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury

13  "controls not only the initial decision to indict, but also significant questions such as how many counts to

14  charge and whether to charge a greater or lesser offense, including the important decision whether to charge

15  a capital crime."  Id. at 399 (citing Vasquez, 474 U.S. at 263).

16      Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the

17  majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has

18  established probable cause that this individual has committed a crime."  See id. at 1214 (Hawkins, J.

19  dissenting).  Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); Marcucci, 299 F.3d at

20  1166-73 (Hawkins, J., dissenting).  In short, the grand jurors' prerogative not to indict enjoys strong support

21  in the Ninth Circuit.  But not in Judge Burns' instructions.

22  **C.    The Instructions Forbid the Exercise of Grand Jury Discretion Established in Both *Vasquez*
        and *Navarro-Vargas II*.**

23

24      The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand

25  jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous

26  decision in Marcucci.  Marcucci reasoned that the instructions do not mandate that grand jurors indict upon

27  every finding of probable cause because the term "should" may mean "what is probable or expected."  299

28  F.3d at 1164 (citation omitted).  That reading of the term "should" makes no sense in context, as Judge

                                                    5                                        07CR1311-DMS

1    Hawkins ably pointed out. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The

2    instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or

3    obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). See

4    also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting *The Oxford American*

5    *Diction and Language Guide* 1579 (1999) (brackets in original)).

6         The debate about what the word "should" means is irrelevant here; the instructions here make no

7    such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply may not

8    choose not to indict in the event of what appears to them to be an unfair application of the law: should "you

9    disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against

10   indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9. Thus, the instruction

11   flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No

12   grand juror would read this language as instructing, or even allowing, him or her to assess "the need to

13   indict." Vasquez, 474 U.S. at 264.

14        Nor does the Navarro-Vargas II majority's faith in the structure of the grand jury a cure for the

15   instructions excesses. The Navarro-Vargas II majority attributes "[t]he grand jury's discretion -- its

16   independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its

17   decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may

18   have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it

19   independent." Id. at 1202 (emphases in the original).

20        Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the

21   'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability

22   of many of its decisions -- sufficiently protects that power." See id. at 1214 (Hawkins, J., dissenting). The

23   flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond

24   making a probable cause determination ... unconstitutionally undermines the very structural protections that

25   the majority believes save[] the instruction." Id. After all, it is an "'almost invariable assumption of the law

26   that jurors follow their instructions.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)). If that

27   "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described

28

6                                                                                    07CR1311-DMS

1  in Vasquez.  Indeed, "there is something supremely cynical about saying that it is fine to give jurors

2  erroneous instructions because nothing will happen if they disobey them."  Id.

3       In setting forth Judge Hawkins' views, Mrs. Pozo-Campillo understands that this Court may not

4  adopt them solely because the reasoning that supports them is so much more persuasive than the majority's

5  sophistry.  Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

6       Here, again, the question is not an obscure interpretation of the word "should", but an absolute ban

7  on the right to refuse to indict that directly conflicts with the recognition of that right in Vasquez, Campbell,

8  and both Navarro-Vargas II opinions.  Navarro-Vargas II is distinguishable on that basis, but not only that.

9       Judge Burns did not limit himself to denying the grand jurors the power that Vasquez plainly states

10  they enjoy.  He also apparently excused prospective grand jurors who might have exercised that Fifth

11  Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that]

12  principle...."  See Ex. A at 8.  The structure of the grand jury and the secrecy of its deliberations cannot

13  embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the

14  conscience of the community.  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a

15  grand jury exercising its powers under Vasquez "serves ... to protect the accused from the other branches

16  of government by acting as the 'conscience of the community.'") (quoting Gaither v. United States, 413 F.2d

17  1061, 1066 &  n.6 (D.C. Cir. 1969)).  The federal courts possess only "very limited" power "to fashion, on

18  their own initiative, rules of grand jury procedure," United States v. Williams, 504 U.S. 36, 50 (1992), and,

19  here, Judge Burns has both fashioned his own rules and enforced them. The instructions here are therefore

20  structural error.  See Navarro-Vargas II, 408 at 1216-17 (Hawkins, J., dissenting).  The indictment must be

21  dismissed.

22  **D.    The Instructions Conflict With *Williams*' Holding that there Is No Duty to Present Exculpatory
        Evidence to the Grand Jury.**

23

24       In Williams, the defendant, although conceding that it was not required by the Fifth Amendment,

25  argued that the federal courts should exercise their supervisory power to order prosecutors to disclose

26  exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment

27  common law.  See 504 U.S. at 45, 51.  Williams held that "as a general matter at least, no such 'supervisory'

28  judicial authority exists."  See id. at 47.  Indeed, although the supervisory power may provide the authority

1  "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct

2  amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this

3  Court and by Congress to ensure the integrity of the grand jury's functions,'" id. at 46 (citation omitted), it

4  does not serve as "a means of prescribing such standards of prosecutorial conduct in the first instance." Id.

5  at 47 (emphasis added).  The federal courts possess only "very limited" power "to fashion, on their own

6  initiative, rules of grand jury procedure." Id. at 50.  As a consequence, Williams rejected the defendant's

7  claim, both as an exercise of supervisory power and as Fifth Amendment common law.  See id. at 51-55.

8      Despite the holding in Williams, the instructions here assure the grand jurors that prosecutors would

9  present to them evidence that tended to undercut probable cause.  See Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the
> trial jury.  You're all about probable cause.  If you think that there's evidence out there that
> might cause you say "well, I don't think probable cause exists," then it's incumbent upon you
> to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-
> bound to present evidence that cuts against what they may be asking you to do if they're
> aware of that evidence.*

14  Id. (emphasis added).  Moreover, the district court later returned to the notion of the prosecutors and their

15  duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of

16  [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See

17  id. at 27.

18      This particular instruction has a devastating effect on the grand jury's protective powers, particularly

19  if it is not true.  It begins by emphasizing the message that Navarro-Vargas II somehow concluded was not

20  conveyed by the previous instruction: "You're all about probable cause." See Ex. A at 20.  Thus, once again,

21  the grand jury is reminded that they are limited to probable cause determinations (a reminder that was

22  probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely

23  would be excused if they rejected this limitation).  The instruction goes on to tell the grand jurors that they

24  should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor

25  will present it.  The end result, then, is that grand jurors should consider evidence that goes against probable

26  cause, but, if none is presented by the government, they can  presume that there is none.  After all, "in most

27  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking

28  you to do if they're aware of that evidence." See id.  Thus, if the exculpatory evidence existed, it necessarily

07CR1311-DMS

1  would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that the

2  U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good

3  faith in all matters presented to you." See id. at 27.

4    These instructions create a presumption that, in cases where the prosecutor does not present

5  exculpatory evidence, no exculpatory evidence exists.  A grand juror's reasoning, in a case in which no

6  exculpatory evidence was presented, would proceed along these lines:

7    (1) I have to consider evidence that undercuts probable cause.
     (2)  The candid, honest, duty-bound prosecutor would, in good faith, have presented any such
8    evidence to me, if it existed.
     (3)  Because no such evidence was presented to me, I may conclude that there is none.
9

10  Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the

11  evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-

12  bound prosecutor would have presented it.

13    The instructions therefore discourage investigation -- if exculpatory evidence were out there, the

14  prosecutor would present it, so investigation is a waste of time -- and provide additional support to every

15  probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side

16  of the equation because it was not presented.  A grand jury so badly misguided is no grand jury at all under

17  the Fifth Amendment.

18  ### III.

19  ### ANY STATEMENTS MADE BY MRS. POZO-CAMPILLO
    ### SHOULD BE SUPPRESSED

20

21    Mrs. Pozo-Campillo was interrogated by agents for approximately one hour and sixteen minutes.

22    A.    The Government Must Demonstrate Compliance With *Miranda*.

23      1.    *Miranda* Warnings Must Precede Custodial Interrogation.

24    The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a

25  custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to

26  secure the privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also

27  Berkemer v. McCarty, 468 U.S. 420, 428 (1984) (restating Miranda principles).  Custodial interrogation is

28  questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

1  deprived of his freedom of action in any significant way. Id. See Orozco v. Texas, 394 U.S. 324, 327

2  (1969).

3      Once a person is in custody, Miranda warnings must be given prior to any interrogation. See United

4  States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (to trigger the Miranda requirement not only

5  must probable cause exist but also a person must reasonably believe that he is not free to leave). Those

6  warnings must advise the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d

7  471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the

8  interrogation must cease. Miranda, 384 U.S. at 474. See also Edwards v. Arizona, 451 U.S. 477, 484

9  (1981).

10     In United States v. Hernandez, 476 F.3d 791 (2007), the Ninth Circuit applied these principles

11  specifically to questioning at the secondary inspection area. In that case, a border patrol officer removed an

12  opaque cellophane bag from the defendant's pants during a pat-down search at the Otay Mesa secondary

13  inspection station. Id. at 795. Then, without giving Miranda warnings, the officer asked the defendant the

14  contents of the bag. Id. Because the officer "knew or should have known his question could reasonably lead

15  to an incriminating response," the officer's question constituted "interrogation." Id. at 796 (citing Rhode

16  Island v. Innis, 446 U.S. 291, 300-01 (1980)). Moreover, the Ninth Circuit concluded the defendant was

17  "in custody" because facts from the evidentiary hearing–including the number of the officers and the layout

18  of the secondary inspection area–revealed a reasonable person would not have felt free to leave. Id. at 796-

19  797. See also Thompson v. Cohen, 516 U.S. 99, 112 (1995) (An individual is "in custody" for purposes of

20  Miranda if "a reasonable person [would have] felt he or she was not at liberty to terminate the interrogation

21  and leave."). Miranda warnings therefore were required before any inculpatory questioning could commence.

22     Mrs. Pozo-Campillo was in custody once she was referred to the secondary area. The primary

23  officer's suspicions that contraband was concealed in the vehicle were made clear at the primary inspection

24  area when he tapped the roof and measured the distance between the interior and exterior of the roof.

25  Mrs. Pozo-Campillo observed this because she was seated in the vehicle during this inspection. An

26  objective view of the circumstances compels the conclusion that Mrs. Pozo-Campillo was not free to leave.

27     This conclusion is further buttressed by the events at the secondary inspection area. Border Patrol

28  protocol dictates that a when a person is referred to secondary their identification is held with the secondary

1   referral slip and passed to the secondary inspector.  Mrs. Pozo-Campillo was asked to exit the vehicle while

2   a more detailed inspection took place.  At the secondary inspection Mrs. Pozo-Campillo did not control her

3   identification, or the vehicle she was driving and she was aware of the officer's suspicions.  Therefore she

4   was not free to leave.  Mrs. Pozo-Campillo was questioned regarding her ownership, dominion, and control

5   of the vehicle suspected of carrying narcotics.  It is undisputed that these questions were not preceded by

6   Miranda warnings, therefore her statements must be suppressed.

7   B.    Mrs. Pozo-Campillo's Statements Were Involuntary.

8           Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case

9   is deprived of due process of law if his conviction is founded upon an involuntary confession.  Arizona v.

10  Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964).  The government bears the

11  burden of proving that a confession is voluntary by a preponderance of the evidence.  Lego v. Twomey, 404

12  U.S. 477, 483 (1972).

13          In order to be voluntary, a statement must be the product of a rational intellect and free will.

14  Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will was overborne

15  in a particular case, the totality of the circumstances must be considered.  Schneckloth v. Bustamonte, 412

16  U.S. 218, 226 (1973).

17          A statement is deemed involuntary if coerced by physical intimidation or psychological pressure.

18  Townsend v. Sain, 372 U.S. 293, 307 (1963).  "The test is whether the confession was 'extracted by any sort

19  of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion

20  of any improper influence.'"  Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168

21  U.S. 532, 542-43 (1897)).  Accord United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).  The

22  government bears a heavy burden in demonstrating that  a confession is voluntary and the finding of

23  voluntariness "'must appear from the record with unmistakable clarity.'"  Davidson, 768 F.2d at 1270.

24          Here, such a finding cannot be made.  Mrs. Pozo-Campillo was interrogated for over an hour.

25  Throughout the duration of the videotaped interrogation, Mrs. Pozo-Campillo repeatedly denied knowledge

26  of the marijuana found in the vehicle.  Nevertheless, agents Swanson and Morquecho continued to

27  interrogate Mrs. Pozo-Campillo.  The agents insisted that Mrs. Pozo-Campillo was not telling the truth and

28  that she would go to jail.  The interrogation was unreasonably lengthy given that the only issue of concern

07CR1311-DMS

1  to the agents was Mrs. Pozo-Campillo's knowledge, or lack of knowledge, of the marijuana concealed in

2  the vehicle.

3  C.      This Court Should Conduct An Evidentiary Hearing.

4      This Court should conduct an evidentiary hearing to determine whether Mrs. Pozo-Campillo's

5  statements should be admitted into evidence, if any such statements exist.  Under 18 U.S.C. § 3501(a), this

6  Court is required to determine, outside the presence of the jury, whether any statements made by Mrs. Pozo-

7  Campillo are voluntary.  In addition, § 3501(b) requires this Court to consider various enumerated factors,

8  including whether Mrs. Pozo-Campillo understood the nature of the charges against her and whether she

9  understood her rights.  Without evidence, this Court cannot adequately consider these statutorily mandated

10  factors.

11      Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual

12  determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12.  See United

13  States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as

14  important as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings

15  should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a

16  prosecutor's responsive pleading.

17                                        **IV.**

18  **THE SEARCH OF MRS. POZO-CAMPILLO'S PHONE WAS UNREASONABLE, THUS**
    **EVIDENCE OBTAINED AS A RESULT OF THIS SEARCH MUST BE SUPPRESSED**.

19

20      Mrs. Pozo-Campillo moves to suppress the information obtained from the cellular telephone seized

21  during her arrest, including any phone numbers, contact information, listing of calls made or received, and

22  any other information obtained from the telephone.  The warrantless search violated the Fourth Amendment

23  and the Electronic Communication Privacy Act (ECPA).  Further, she moves to suppress any evidence

24  obtained as a result of the information obtained from the cellular telephone.  In the alternative, and at a

25  minimum, the court should conduct an evidentiary hearing to determine the circumstances surrounding the

26  search of the electronic information contained in the telephone.

27  //

28  //

1    **A.    The Search of the Telephone Violated the Fourth Amendment**

2          The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be

3    secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S.

4    CONST. Amend. IV.    Subject to only a few specifically established and well delineated exceptions,

5    warrantless searches are *per se* unreasonable under the Fourth Amendment.  Mincey v. Arizona, 437 U.S.

6    385, 390 (1978).  The burden is on the government to show the reasonableness of a warrantless search.

7    United States v. Carbajal, 956 F.2d 924, 930 (9th Cir. 1992).

8          Mrs. Pozo-Campillo had a reasonable expectation of privacy of the electronic information that was

9    stored in the cellular telephone, and therefore has standing to challenge the search and seizure.  The search

10   and seizure were made without a warrant, and there is no indication that Mrs. Pozo-Campillo gave consent

11   to the se arch and seizure.  There were no circumstances present that would excuse the warrant requirement

12   -- it was not justified as a search incident to arrest, nor as a border search. There were no exigent

13   circumstances present, and none of the other exceptions to the warrant requirement applied.  In this case,

14   where Mrs. Pozo-Campillo had been arrested and was in custody, and the cellular telephone was in the

15   exclusive control of the agents, it would have been simple and practicable to obtain a search warrant to

16   search the electronic contents of the telephone.  The electronic information gathered from the telephone

17   should be suppressed.  Furthermore, the government should be precluded from admitting or relying upon

18   the fruits of this unlawful search at trial.

19          **1.    Mrs. Pozo-Campillo has standing to challenge the admission of the unlawfully obtained evidence.**

20

21          A defendant has standing to challenge a search or seizure if he has an actual expectation of privacy

22   in the item searched and that expectation of privacy is one that society recognizes as reasonable.  See Bond

23   v. United States, 529 U.S. 334, 338 (2000).  Cellular telephones "record incoming and outgoing calls, and

24   can also contain address books, calendars, voice and text messages, email, video and pictures.  Individuals

25   can store highly personal information on their cell phones, and can record their most private thoughts and

26   conversations on their cell phones through email and text, voice and instant messages."  United States v.

27   Park, 2007 WL 1521573 (N.D.Cal 2007).  Personal cellular telephones are a ubiquitous element of today's

28   society, and the expectation of privacy in the contents and memory of the telephone is widespread.  Because

07CR1311-DMS

1    Mrs. Pozo-Campillo had a reasonable expectation of privacy in the cellular telephone in her possession, she

2    has standing to challenge the search and seizure of the electronic information in the telephone.

3    **2.    This warrantless search was not incident to arrest**

4    This search does not fall under the exception to the warrant requirement as a search incident to arrest.

5    The government has not provided any evidence to establish that the search and seizure were incident to a

6    lawful arrest.  Furthermore, a search of the electronic information in a cellular telephone is not the type of

7    search activity protected by the search incident to arrest exception.

8    A proper warrantless search incident to arrest must be conducted "at or about the same time as the

9    arrest." United States v. Turner, 926 F.2d 883, 887 (9th Cir. 1991).  In this case the evidence suggests that

10   the search was not made at the same time as the arrest.  The agents searched the telephone after Mrs. Pozo-

11   Campillo was arrested, while she was in the interrogation room.

12   Warrantless searches incident to arrest are permissible because of the "need of law enforcement

13   officers to seize weapons or other things which might be useful to assault an officer or effect an escape, as

14   well as the need to prevent the loss or destruction of evidence." United States v. Hudson, 100 F.3d 1409,

15   1419 (9th Cir. 1996).  At issue here is the electronic information contained within the cellular phone.  Such

16   information cannot be used to assault an officer, nor can it be destroyed by the arrestee once it is in law

17   enforcement custody.  A search of the electronic contents of a cellular telephone is not the kind of search

18   that is contemplated by the search incident to arrest exception to the warrant requirement.  Therefore, even

19   if the government were to establish the other requirements of a search incident to arrest, the exception would

20   not apply.

21   **3.    This warrantless search was not a "border search"**

22   The government will not be able to show that this search was reasonable as a "border search"

23   exception to the warrant requirement.  The constitutional protections in the Fourth Amendment apply equally

24   at the international border as in the interior, thus any search or seizure at the border must be reasonable.  See

25   United States v. Guadalupe-Garza, 421 F.2d 876, 878 (9th Cir. 1970).  Governmental interests at the border

26   often outweigh individual privacy interests, and thus agents at the border are constitutionally permitted to

27   conduct routine searches without warrants or reasonable articulable suspicion in order to "regulate collection

28   of duties and prevent introduction of contraband." United States v. Aragon, 155 F.3d 561, 561 (9th Cir.

1  1998). However, their authority is "not without qualification and limitation." United States v. Soto-Soto,

2  598 F.2d 545, 548 (9th Cir. 1978). In this case, the agents could not reasonably have been searching for

3  merchandise or contraband when they searched the electronic information contained in the cellular

4  telephone. The search of the telephone was not a routine border search. The search of the telephone is akin

5  to a search of the information contained in a laptop computer, which has been held to be "intrusive" and thus

6  not subject to the routine border search exception. See United States v. Arnold, 454 F.Supp.2d 999 (C.D.

7  Cal. 2006).

8  **4.      Exigent Circumstances**

9  In the absence of consent, a warrant, or an exception to the warrant requirement the government must

10  show that there was probable cause and exigent circumstances to justify a search or seizure. "Only in

11  exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization

12  for a search." Chambers v. Maroney, 399 U.S. 42, 51 (1970). The government has not shown that there was

13  probable cause nor exigent circumstances to justify the warrantless search of the telephone.

14  B. The Search of the Cellular Telephone Violated the ECPA

15  When the border officials searched and seized the electronic information store in the telephone, they

16  did so in violation of the ECPA. Title II of the ECPA "generally proscribes unauthorized access to stored

17  or electronic communications." Steve Jackson Games, Inc. v. United States Secret Service, 36 F.3d 457,

18  462 (5th Cir. 1994). Accessing of stored electronic communications is governed by Title II of the ECPA,

19  18 U.S.C. §2701, et seq. See Id. at 462. "Generally, a search warrant, rather than a court order, is required

20  to obtain access to the contents of a stored electronic communication." Id. at 462 n.7; see also 18 U.S.C.

21  §2703(a). See United States v. Reyes, 922 F. Supp. 818 (S.D.N.Y. 1996) (finding that Title II applies to

22  seizure of stored data in a pager). Therefore, because the government searched and seized stored data from

23  the cellular telephone in the absence of a search warrant, suppression of this evidence is warranted.

24  **C.      All Evidence Seized as a Result of the Unlawful Searches and Seizures Must Be Suppressed.**

25  This Court should suppress all evidence discovered as a result of the unlawful search and seizure of

26  the electronic information stored on the cellular telephone. "It is well established that the Fourth

27  Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches

28  and seizures." United States v. Crawford, 372 F.3d 1048, 1054 (9th Cir. 2004) (citing Wong Sun v. United

1  States, 371 U.S. 471, 484-88 (1963)). "Evidence obtained by such illegal action of the police is 'fruit of the

2  poisonous tree,' warranting application of the exclusionary rule if, 'granting establishment of the primary

3  illegality, the evidence to which instant objection is made had been come at by exploitation of that illegality

4  or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. (citing Brown v.

5  Illinois, 422 U.S. 590, 599 (1975)). Because this search was in violation of the Fourth Amendment all

6  evidence seized or derived from the unlawful search must be suppressed.

7  **V.**

8  **MOTION TO COMPEL DISCOVERY**

9      Mrs. Pozo-Campillo moves for the production by the government of the following discovery.  This

10  request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed

11  below that is in the custody, control, care, or knowledge of any government agency.  See generally Kyles

12  v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

13      (1)  The Defendant's Statements.  The Government must disclose to the defendant all copies of any

14  written or recorded statements made by the defendant; the substance of any statements made by the

15  defendant which the Government intends to offer in evidence at trial; any response by the defendant to

16  interrogation; the substance of any oral statements which the Government intends to introduce at trial and

17  any written summaries of the defendant's oral statements contained in the handwritten notes of the

18  Government agent; any response to any Miranda warnings which may have been given to the defendant; as

19  well as any other statements by the defendant.  Fed. R. Crim. P. 16(a)(1)(A).  The Advisory Committee

20  Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's

21  statements, whether oral or written, regardless of whether the government intends to make any use of those

22  statements.

23      (2)  Arrest Reports, Notes and Dispatch Tapes.  The defense also specifically requests that all arrest

24  reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any

25  questioning, if such reports have not already been produced in their entirety, be turned over to him.  This

26  request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in

27  which statements of the defendant or any other discoverable material is contained.  This is all discoverable

28  under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963).  See also Loux v.

07CR1311-DMS

1  United States, 389 F.2d 911 (9th Cir. 1968).  Arrest reports, investigator's notes, memos from arresting

2  officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available

3  under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(i).  Preservation of rough notes

4  is requested, whether or not the government deems them discoverable.

5      (3) <u>Brady Material</u>.  Mrs. Pozo-Campillo requests all documents, statements, agents' reports, and

6  tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the

7  government's case.  Impeachment as well as exculpatory evidence falls within <u>Brady's</u> definition of evidence

8  favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S.

9  97 (1976).

10      (4) <u>Any Information That May result in a Lower Sentence Under The Guidelines</u>.  As discussed

11  above, this information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  This request includes

12  any cooperation or attempted cooperation by the defendant, as well as any information that could affect any

13  base offense level or specific offense characteristic under Chapter Two of the Guidelines.  Also included

14  in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's

15  criminal history, or any other application of the Guidelines.

16      (5) <u>The Defendant's Prior Record</u>.  Evidence of prior record is available under Fed. R. Crim. P.

17  16(a)(1)(B).  Counsel specifically requests a complete copy of any criminal record.

18      (6) <u>Any Proposed 404(b) Evidence</u>.  Evidence of prior similar acts is discoverable under Fed. R.

19  Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon

20  request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the

21  general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.

22  The defendant requests that such notice be given three weeks before trial in order to give the defense time

23  to adequately investigate and prepare for trial.

24      (7) <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant,

25  is discoverable under Fed. R. Crim. P. 16(a)(1)(C).

26      (8) <u>Tangible Objects</u>.  The defense requests, under Fed. R. Crim. P. 16(a)(1)(C) the opportunity to

27  inspect and copy as well as test, if necessary, all other documents and tangible objects, including

28  photographs, books, papers, documents, photographs of buildings or places or copies of portions thereof

1    which are material to the defense or intended for use in the government's case-in-chief or were obtained from

2    or belong to the defendant. Specifically, Mrs. Pozo-Campillo requests a copy of the videotape interview of

3    the material witness, if one exists.

4        (9) <u>Evidence of Bias or Motive to Lie</u>. The defense requests any evidence that any prospective

5    government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or

6    her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th

7    Cir. 1988).

8        (10) <u>Impeachment evidence</u>. Mrs. Pozo-Campillo requests any evidence that any prospective

9    government witness has engaged in any criminal act whether or not resulting in a conviction and whether

10    any witness has made a statement favorable to the defendant. <u>See</u> Fed. R. Evid. 608, 609 and 613. Such

11    evidence is discoverable under <u>Brady v. Maryland</u>, <u>supra</u>. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th

12    Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that

13    detracts from a witness' credibility).

14        (11) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defense requests any

15    evidence that any prospective witness is under investigation by federal, state or local authorities for any

16    criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

17        (12) <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>. Mrs. Pozo-Campillo

18    requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any

19    prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any

20    evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

21    <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th

22    Cir. 1980).

23        (13) <u>Witness Addresses</u>. The defense requests the name and last known address of each prospective

24    government witness. <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>,

25    716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United

26    States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979)) (defense has equal right to talk to witnesses). The

27    defendant also requests the name and last known address of every witness to the crime or crimes charged

28

07CR1311-DMS

1  (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness.

2  <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

3      (14) <u>Name of Witnesses Favorable to the Defendant</u>.  Mrs. Pozo-Campillo requests the name of any

4  witness who made any arguably favorable statement concerning the defendant or who could not identify him

5  or who was unsure of his identity, or participation in the crime charged.  <u>Jackson v. Wainwright</u>, 390 F.2d

6  288 (5th Cir. 1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575 F.2d

7  1164, 1168 (6th Cir.), <u>cert. denied</u>, 439 U.S. 883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979),

8  <u>cert. denied</u>, 444 U.S. 1086 (1980).

9      (15) <u>Statements Relevant to the Defense</u>.  Mrs. Pozo-Campillo requests disclosure of any statement

10  that may be "relevant to any possible defense or contention" that he might assert.  <u>United States v. Bailleaux</u>,

11  685 F.2d 1105 (9th Cir. 1982).  This would include Grand Jury transcripts which are relevant to the defense

12  motion to dismiss the indictment.

13      (16) <u>Jencks Act Material</u>.  The defense requests all material to which Mrs. Pozo-Campillo is entitled

14  pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes.  A

15  verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is

16  sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v. United States</u>,

17  373 U.S. 487, 490-92 (1963).

18      (17) <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant

19  requests all statements and/or promises, expressed or implied, made to any government witnesses, in

20  exchange for their testimony in this case, and all other information which could arguably be used for the

21  impeachment of any government witnesses.

22      (18) <u>Reports of Scientific Tests or Examinations</u>.  Pursuant to Fed. R. Crim. P. 16(a)(1)(D), the

23  defendant requests the reports of all tests and examinations conducted upon the evidence in this case.

24  Including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within

25  the possession, custody, or control of the government, the existence of which is known, or by the exercise

26  of due diligence may become known, to the attorney for the government, and which are material to the

27  preparation of the defense or are intended for use by the government as evidence in chief at the trial.

28

07CR1311-DMS

(19) <u>Henthorn Material</u>.  The defense requests that the prosecutor review the personnel files of the officers involved in his arrests, and those who will testify, and produce to him any exculpatory information at least two weeks prior to trial and one week prior to the motion hearing.  <u>See</u> <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  In addition, he requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an <u>in</u> <u>camera</u> inspection.

(20) <u>Informants and Cooperating Witnesses</u>.  Mrs. Pozo-Campillo requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case.  The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  Mrs. Pozo-Campillo also requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Such information would include inducements, favors, payments, or threats made to the witness to secure cooperation with the authorities.

(21) <u>Expert Witnesses</u>.  The defendant requests disclosure of any expert witnesses the government intends to call at trial and "a written summary of testimony that the government intends to use," including the "witnesses' opinions, the bases and the reasons for those opinions" and his or her qualifications.  Fed. R. Crim. P. 16(a)(1)(E).

(22) <u>Residual Request</u>.  The defense intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  This request specifically includes all subsections of Rule 16.  Mrs. Pozo-Campillo requests that the government provide him and his attorney with the above requested material sufficiently in advance of trial.

## VI.

## <u>MOTION TO PRESERVE AND INSPECT EVIDENCE</u>

Mrs. Pozo-Campillo requests the preservation of all physical evidence in this case.  This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case.  <u>See</u> <u>United States v. Riley</u>, 189 F.3d 802, 806-808 (9th Cir.1999).  This request includes, but is not limited to: (1) the alleged contraband involved in the case,

07CR1311-DMS

1    including all samples used to conduct all tests; (2) the containers or packaging within which the contraband

2    was discovered; (3) the results of any fingerprint analysis; (4) the defendant's personal effects; (5) any

3    videotapes/audiotapes capturing Mrs. Pozo-Campillo in this matter; (6) recorded communications made by

4    the government related to the above captioned case, e.g., radio communications post port inspection and pre-

5    stop; (7) any evidence seized from the defendant or any third party; (8) the rough notes of the agents

6    involved in the above captioned case; and (9) the vehicle driven by Mrs. Pozo-Campillo.  Mrs. Pozo-

7    Campillo requests that government counsel be ordered to notify the agencies and private contractors with

8    custody of such evidence be informed of the Court's preservation order.

9    Further, Mrs. Pozo-Campillo requests an order granting defense counsel and/or their investigators

10    access to the alleged contraband and other evidence for the purposes of investigation, including inspection,

11    photographing, and re-weighing of the alleged contraband if necessary.  Fed. R. Crim. P. 16(a)(1)(C).  A

12    proposed Order will be provided for the convenience of the Court.

13    Mrs. Pozo-Campillo requests that the alleged contraband be preserved until inspection and weighing

14    by the defense is complete and that the remainder of the evidence in the case be preserved throughout the

15    pendency of the case, including any appeals.

16    **VII.**

17    **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

18    To date, Mrs. Pozo-Campillo and defense counsel have received limited discovery from the

19    government.  It is anticipated that as new information comes to light, the defense will likely find it necessary

20    to file further motions.  Therefore, it is requested that defense counsel be allowed the opportunity to file

21    further motions based upon information gained through the discovery process.

22    **VIII.**

23    **CONCLUSION**

24    For the reasons stated above, Mrs. Pozo-Campillo moves this Court to grant his motions.

25    Respectfully submitted,

26

27    Dated: April 22, 2008          /s/ Sara M. Peloquin
                                     **SARA M. PELOQUIN**
                                     Federal Defenders of San Diego, Inc.
28                                   Attorneys for Mrs. Pozo-Campillo

07CR1311-DMS