1   KAREN P. HEWITT
    United States Attorney
2   LAWRENCE A. CASPER
    Assistant U.S. Attorney
3   California Bar No. 235110
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone: (619) 557-7455/(619) 235-2757 (Fax)
    Email: Lawrence.Casper@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10
    UNITED STATES OF AMERICA,        )   Criminal Case No. 08CR0805-W
11                                   )   DATE:      May 5, 2008
                    Plaintiff,       )   TIME:         2:00 p.m.
12                                   )
                    v.               )   GOVERNMENT'S   RESPONSE   AND
13                                   )   OPPOSITION TO DEFENDANT'S MOTIONS
    YLIANA POZO-CAMPILLO,            )   TO:
14                                   )
                    Defendant.       )   (1)   DISMISS   INDICTMENT   DUE   TO
15                                   )         UNCONSTITUTIONAL STATUTE;
                                     )   (2)   DISMISS   INDICTMENT   DUE   TO
16                                   )         IMPROPER   GRAND   JURY
                                     )         INSTRUCTIONS;
17                                   )   (3)   SUPPRESS STATEMENTS;
                                     )   (4)   SUPPRESS CELL PHONE EVIDENCE;
18                                   )   (5)   COMPEL DISCOVERY;
                                     )   (6)   PRESERVE EVIDENCE; and
19                                   )   (7)   GRANT LEAVE TO FILE FURTHER
                                     )         MOTIONS
20                                   )
                                     )   TOGETHER WITH STATEMENT OF FACTS
21                                   )   AND MEMORANDUM OF POINTS AND
                                     )   AUTHORITIES   AND   GOVERNMENT'S
22                                   )   MOTION   TO   COMPEL   RECIPROCAL
                                     )   DISCOVERY
23                                   )
    _____ )
24

25          COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

26   KAREN P. HEWITT, United States Attorney, and Lawrence A. Casper, Assistant United States

27   Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions

28   together with Statement of Facts and Memorandum of Points and Authorities.  This Response and

1  Opposition is based upon the files and records of the case.

2                                        **I.**

3                        **STATEMENT OF THE CASE**

4          On  March 19, 2008, a federal grand jury in the Southern District of California returned a two-

5  count Indictment charging defendant Yliana Pozo-Campillo ("Defendants") with: (i) importing

6  approximately 49.72 kilograms (109.38 pounds) of marijuana into the United States in violation of 21

7  U.S.C. sections 952 and 960; and (ii) possessing approximately 49.72 kilograms (109.38 pounds) of

8  marijuana with intent to distribute in violation of 21 U.S.C. section 841(a)(1). Defendant was arraigned

9  on the Indictment on March 20, 2008 and pleaded not guilty.

10                                       **II.**

11                       **STATEMENT OF FACTS**

12  **A.      Defendants' Apprehension**

13         **1.       Primary Inspection:**

14         On March 6, 2008, at approximately 8:55 a.m., Defendant entered the United States at the

15  Calexico West Port of Entry as the driver and sole occupant of a 1997 white Chevy Ventura mini-van

16  bearing Baja, California, Mexico license plates (BEG6880). Upon primary inspection, Customs and

17  Border Protection Officer (CBPO) P. Ash noticed that the interior roof of the vehicle was lower than

18  normal and sounded solid.  Defendant claimed that the vehicle belonged to her husband and that her

19  destination was Calexico.  CBPO Ash observed that Defendant appeared overly friendly.  In turn,

20  Defendant and the vehicle were referred to secondary.

21         **2.       Secondary Inspection:**

22         In the secondary lot, Defendant presented her border crossing card (DSP-150) to CBPO O.

23  Hurtado and told him her destination was Calexico.  She again claimed the vehicle belonged to her

24  husband and provided a negative customs declaration.  CBPO Hurtado noticed a space discrepancy in

25  the roof of the vehicle.  He observed that the interior roof was lower than normal with a gap between

26  the top and bottom of the roof of approximately 8-10 inches.  At that time, CBPO Hurtado asked that

27  the vehicle be screened by CBP Canine Enforcement Officer C. Anzaldo using his narcotics detector

28  dog.  The dog alerted to the rear seat area in the interior of the vehicle.  Upon closer inspection, CBPO

1  Hurtado discovered 8 packages concealed in the interior roof area of the vehicle in a specially built

2  compartment. One of the packages was probed and a sample of a green leafy substance was obtained

3  which field tested positive for marijuana.   The 8 packages had a combined weight of approximately

4  49.72 kilograms (109.38 pounds).

5  **B.**    **Defendant Yliana Pozo's Statement**

6          While providing biographical data, Defendant stated that her husband, Jose Manuel Mora, was

7  deceased. At approximately 11:07 a.m., Special Agent Lance Swanson, witnessed by Agent Joe

8  Morquecho, advised Defendant of her Miranda rights in Spanish. Defendant waived her rights on

9  videotape and agreed to provide a statement.

10          During her statement, Defendant claimed that she was planning a trip to the interior part of

11  Mexico and needed new luggage. She stated that she recently purchased a 2002 Ford Winstar with U.S.

12  license plates but has not yet registered it in Mexico. She had in her possession a key for a Ford vehicle.

13  That morning her friend, Martin, stopped by and offered to lend her the Chevy van so that she could

14  cross the border to buy luggage in Calexico for the trip. Defendant claimed that Martin's visit was

15  unplanned. She stated that she does not know who owns the Chevy van. Defendant claims that she told

16  Martin she was going to Food4Less then Mervyns or Target. She also claimed that Martin took her Ford

17  Winstar in return; she claimed that she had an extra key that she gave to him. She also claimed that they

18  were to exchange vans at her house when she returned back to Mexicali. Defendant claimed she met

19  Martin at a bar 1-2 months earlier and that she does not know him very well. She provided a description

20  as well as a number she claimed was his direct connect number.

21          Defendant denied knowledge of the marijuana and claimed she had no need to do something of

22  this nature. When asked if she had ever ridden in the Chevy van, Defendant said "no" and then changed

23  her answer to one time in Mexicali. When asked, she claimed she had crossed into the United States

24  in the van one time approximately three weeks earlier and claimed that she was driving on that occasion.

25  Upon checking, Agent Swanson determined that Defendant had crossed the border in the Chevy van at

26  least six times before her arrest. When confronted with this information, Defendant claimed she lied

27  because she was scared and nervous. During the interview, Defendant also reiterated that her husband,

28  whom she had earlier claimed owned the vehicle, was deceased.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.    Defendant's Criminal History**

Defendant has no known criminal history.

**III.**

**DEFENDANT'S MOTIONS**

**A.    The Drug Statutes Are Constitutional**

Defendant contends that the drug statutes are unconstitutional despite Ninth Circuit authority to the contrary.  See,  United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002).

The Ninth Circuit has already squarely and repeatedly rejected the claim that Apprendi rendered the federal drug laws facially unconstitutional.  See, e.g., United States v. Jimenez , 300 F.3d 1166 (9th Cir. 2002); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002); United States v. Carranza, 289 F.3d 634, 643 (9th Cir. 2002); United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002); United States v. Varela-Rivera, 279 F.3d 1174, 1175 n.1 (9th Cir. 2002).  See also Varela-Rivera, 279 F.3d at 1175 n.1 (recognizing that Buckland foreclosed the argument that 21 U.S.C. §§ 841, 952 and 960 are unconstitutional).

Sections 841, 952 and 960 do not specify who shall determine drug type and amount, or what burden of proof is required.  As a result, two constructions of these statutes are possible; one which construes drug type and amount as determinations to be made by the sentencing judge by a preponderance of the evidence (a construction that poses constitutional problems under Apprendi), and an alternative construction under which drug type and amount are findings to be made by the jury beyond a reasonable doubt (a constitutionally valid construction).

Faced with these two competing interpretations, and in the absence of clear congressional intent, the Ninth Circuit employed the constitutional avoidance doctrine.  Under that doctrine, every reasonable construction must be indulged in order to save a statute from unconstitutionality.  Buckland, 289 F.3d at 564.  Thus, where an otherwise acceptable construction of a statute would raise "serious constitutional problems," and where an alternative interpretation of the statute is "fairly possible ," courts are obligated to construe the statute to avoid such problems.  Id.  Because it is "fairly possible" to interpret drug type and quantity as determinations required to be made by the jury, and because that interpretation is

4

1  constitutionally valid, the Ninth Circuit has interpreted 21 U.S.C. § 841 and its "structurally identical"

2  counterpart, 21 U.S.C. § 960, as requiring the jury to determine drug type and quantity beyond a

3  reasonable doubt. Buckland, 289 F.3d 567-68; Mendoza-Paz, 286 F.3d at 1110.

4      Defendant also claims that the United States must prove *mens rea* with respect to drug type and

5  quantity. In United States v. Carranza, 289 F.3d 634, 643-44 (9th Cir. 2002), this Court reaffirmed

6  longstanding precedent that the government need not prove that defendants knew the type or quantity

7  of controlled substance they were smuggling in order to sustain a conviction under the federal drug

8  statutes. See also United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993); United States v. Ramirez-

9  Ramirez, 875 F.2d 772, 774 (9th Cir. 1989). The government must prove only that defendants knew

10  they were smuggling some type of controlled substance. Carranza, 289 F.3d at 644.

11      Defendant, however, relying on the decisions in Apprendi, Buckland, and Mendoza-Paz, argues

12  that Carranza should be ignored. The Ninth Circuit revisited its holding in Carranza after the decisions

13  in Buckland and Mendoza-Paz in United States v. Hernandez, 322 F.3d 592, 602 (9th Cir. 2003). In

14  Hernandez, the court rejected the mens rea argument made by the appellant, concluding:

15
16  > [Appellant] argues that the reasoning behind our decisions in Buckland and Mendoza-Paz require the government to prove that [Appellant] had the requisite mens rea with respect to both the type and quantity of drug he possessed and imported. This challenge is foreclosed by United States v. Carranza, 289 F.3d 634, 644 (9th Cir.2002) ("A defendant charged with importing or possessing a drug is not required to know the type and amount of the drug.").
17
18

19  Id.

20      This Court should reject Defendant's attempt to read into the drug statutes a new mens rea

21  element. Defendant's motion to dismiss should be denied.

22      **B.**    **The Grand Jury Instructions Were Not Faulty, And The Indictment Should Not Be Dismissed**

23

24      1.    Introduction

25      Defendant makes contentions relating to two separate instructions given to the grand jury during

26  its impanelment by District Judge Larry A. Burns on January 10, 2007. [Memorandum of Points and

27

28

1    Authorities, pp. 2-9 (hereinafter "Memorandum")[1]  Although recognizing that the Ninth Circuit in

2    United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand

3    jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the

4    approved instructions, and by so doing rendered them improper to the point that the Indictment should

5    be dismissed.  In fact, the identical arguments advanced by Defendant here were rejected in a 12 page

6    written order issued by the Hon. Barry T. Moskowitz in this District and a recent Order entered by the

7    Hon. John A. Houston.  See Order Denying Defendant's Motion to Dismiss the Indictment in United

8    States v. Manuel Martinez-Covarrubias, No. 07cr0491-BTM, filed October 11, 2007 (Appendix 3,

9    hereto) and in the Amended Order Denying Defendant's Motion to Dismiss the Indictment in United

10   States v. Diana Jimenez-Bermudez, 07cr1372-JAH (Appendix 4, hereto).

11        In making his arguments concerning the two separate instructions Defendant urges this Court

12   to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were

13   discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked

14   instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers

15   over grand jury procedures.  [Memorandum p. 7.]  This is a practice the Supreme Court discourages as

16   Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand

17   jury's operational separateness from its constituting court, it should come as no surprise that we have

18   been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury

19   procedure. ").  [Id.]  Isgro reiterated:

20             [A] district court may draw on its supervisory powers to dismiss an indictment.
         The supervisory powers doctrine "is premised on the inherent ability of the federal
21       courts to formulate procedural rules not specifically required by the Constitution or
         Congress to supervise the administration of justice."  Before it may invoke this power,
22       a court must first find that the defendant is actually prejudiced by the misconduct.
         Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free
23       from the substantial influence of [the misconduct]"-a dismissal is not warranted.

24   974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an

25   attempt to dodge the holding in Williams, Defendant appears to base her contentions on the Constitution

26

27   ─────────────────────

28        [1]     Defendant supplies a "Partial Transcript" of the grand jury proceedings which records
     the instructions to the impaneled grand jurors after the voir dire had been conducted.  [Appendix 1.]
     To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records
     relevant portions of the voir dire proceedings.  [Appendix 2.]

as a reason to dismiss the Indictment. [Memorandum p. 9 ("A grand jury so badly misguided is no grand

jury at all under the Fifth Amendment").]  Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes
> with the grand jury's independence and the integrity of the grand jury proceeding.
> "Constitutional error is found where the 'structural protections of the grand jury have
> been so compromised as to render the proceedings fundamentally unfair, allowing the
> presumption of prejudice' to the defendant."  Constitutional error may also be found "if
> [the] defendant can show a history of prosecutorial misconduct that is so systematic and
> pervasive that it affects the fundamental fairness of the proceeding or if the independence
> of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[2]

> The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is,
> whether or not there should or should not be a federal law designating certain activity
> as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will
> provide you with important service in helping you to find your way when confronted
> with complex legal problems.   It is entirely proper that you should receive this
> assistance.  If past experience is any indication of what to expect in the future, then you
> can expect candor, honesty, and good faith in matters presented by the government
> attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional

because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law,

then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3]  408 F.3d at

1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy

or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury

has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  Id.

---

[2]      In Isgro the defendants choose the abrogation of constitutional rights route when
asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not
prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to
support the dismissal of the indictment."  (relying on Williams)).

[3]      The Court acknowledged that as a matter of fact jury nullification does take place, and
there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact
vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all
the reasons we have discussed, there is no post hoc remedy for that;  the grand jury's motives are not
open to examination."  408 F.3d at 1204 (emphasis in original).

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to  contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4/]

Defendant acknowledges that in line with Navarro-Vargas, "Judge Bums instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain

---

[4/]    The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals.  This transcript involves the voir dire portion of the grand jury selection process, and has been redacted,  to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

1   activity [as] criminal is not up to you.'" [Memorandum p. 3.] Defendant notes, however, that "[t]he

2   instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that

3   judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting

4   even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the

5   evidence maybe insufficient.'" [Memorandum p.3.] Defendant contends that this addition to the

6   approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors

7   disagree with a proposed prosecution." [Memorandum p. 3.] Defendant further contends that the flat

8   prohibition was preemptively reinforced by Judge Burns when he "referred to an instance in the grand

9   juror selection process in which he excused three potential jurors," which resulted in his "not only

10   instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of

11   being excused from service as a grand juror."[5/] [Memorandum p. 3.]

12       In concocting her theory of why Judge Burns erred, Defendant posits that the expanded

13   instruction renders irrelevant the debate about what the word "should" means. [Memorandum p. 5-6.]

14   Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they

15   disagree with a proposed prosecution." [Memorandum p. 6.] This argument mixes-up two of the

16   holdings in Navarro-Vargas in the hope they will blend into one. They do not.

17       Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

18   the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

19   Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

20   expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in

21   grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights,

22   and within the law, when he excused the three prospective grand jurors because of their expressed

23   inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled

24   grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder

25   did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns'

26   words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the

27   grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand

28

---

[5/]    See Appendix 2.

jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the term "should" was germane.[6/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows discretion on the grand jury not to indict.[7/]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

---

[6/]    That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.   To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

1

2          Probable cause means that you have an honestly held conscientious belief and
          that the belief is reasonable that a federal crime was committed and that the person to be
          indicted was somehow associated with the commission of that crime.  Either they
3          committed it themselves or they helped someone commit it or they were part of a
          conspiracy, an illegal agreement, to commit that crime.

4          To put it another way, you should vote to indict when the evidence presented to
          you is sufficiently strong to warrant a reasonable person to believe that the accused is
5          probably guilty of the offense which is proposed.

6    Partial Transcript p. 23.

7          While the new grand jurors were told by Judge Burns that they could not question the wisdom

8    of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not

9    to return an indictment per Navarro-Vargas.  Further, if a potential grand juror could not be dissuaded

10   from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

11   jury nullification advocate.  See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005).  Thus,

12   there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising

13   its supervisory powers.

14         Further, a reading of the dialogues between Judge Burns and the three excused jurors found in

15   the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual

16   decision, that those three individuals should not serve on the grand jury because of their views.  Judge

17   Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand

18   jurors, but merely bespeaks a reminder to the grand jury of their duties.

19         Finally, even if there was an error, Defendant has not demonstrated she was actually prejudiced

20   thereby, a burden she has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision

21   to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted."

22   Isgro, 974 F.2d at 1094.

23

24         3.    The Addition to the "United States Attorney and his Assistant United
                States Attorneys" Instruction Did Not Violate the Constitution

25         Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

26   U.S. Attorneys, Judge Burns variously stated:

27         [T]here's a close association between the grand jury and the U.S. Attorney's Office.
                . . . . You'll work closely with the U.S. Attorney's Office in your investigation
28         of cases.

11

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[8/]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p. 8.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Memorandum p.8.] From this lash-up Defendant contends:

> These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's

---

[8/]     Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

12

reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

> (1) I have to consider evidence that undercuts probable cause.

> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum p. 9.]  (Emphasis added.)[9/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10/] (emphasis added)).  <u>See also</u>, <u>United States v.</u>

---

[9/]     The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. <u>See</u> <u>McClean v. Moran</u>, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S. 314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)). <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

[10/]     Note that in <u>Williams</u> the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55.  <u>See also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in <u>Isgro</u> used <u>Williams</u>' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.

(continued...)

Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[11/] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[12/] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[13/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[14/]

---

[10/] (...continued)
974 F.2d at 1096.

[11/]    He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[12/]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[13/]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14/]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

(continued...)

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15/]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16/]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in <u>Navarro-Vargas</u> was found to be "unnecessary language [which] does not violate the Constitution," 408

---

[14/](...continued)
Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

[15/]     Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[16/]     Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," <u>Williams</u>, 504 U.S. at 51 (citing <u>United States v. Calandra</u>, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

1    F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

2    concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

3    not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

4    while reviewing Williams established that there is nothing in the Constitution which requires a

5    prosecutor to give the person under investigation the right to present anything  to the grand jury

6    (including his or her testimony or other exculpatory evidence), and the absence of that information does

7    not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there

8    exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on

9    United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

10    since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

11    policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

12    unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

13    an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

14    any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

15    Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory

16    comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

17    it stands between the government and the accused and is independent,"  which was also required by

18    Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

19    mean the instructions were constitutionally defective requiring dismissal of this indictment or any

20    indictment.

21        The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

22    the "'structural protections of the grand jury have been so compromised as to render the proceedings

23    fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

24    can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

25    the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

26

27

28        [17]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her
job with the United States Attorney's Office for such a failure per the USAM.

16

1    infringed." <u>Isgro</u>, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other

2    indictment, need not be dismissed.

3                    **C.    DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED**

4         Defendant moves to suppress statements and requests that the Government prove that all

5    statements were voluntarily made, and made after a knowing and intelligent <u>Miranda</u> waiver.  Defendant

6    contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether

7    Defendant's statements were voluntary.   Defendant's motion to suppress statements should be denied

8    without an evidentiary hearing because she failed to allege a specific factual dispute, and failed to

9    support her contentions with a sworn declaration as required by Crim LR 47.1(g).

10
                     **1.    Defendant's Statements Made At Secondary Inspection Were Non-**
11                            **Custodial**

12        Defendant seeks to suppress statements she made in response to routine questioning by the

13   Secondary Inspection Officer.  Those statements were admittedly made before the 49.72 kilograms of

14   marijuana inside her vehicle were discovered; before she was placed under arrest, handcuffed or even

15   patted down; and, in fact, even before she had been escorted away from the vehicle into the secondary

16   office.

17        In fact, the statements that Defendant seeks to suppress apparently include her statement to

18   CBPO Hurtado that the vehicle belonged to her husband (whom she later told agents was deceased) and

19   that she was not bringing anything into the United States.  As detailed above, both of these statements

20   were made before the marijuana was discovered and even before Defendant was escorted away from

21   her vehicle; rather they were made during the routine secondary inspection of the vehicle.

22        Construing the requirements of <u>Miranda v. Arizona</u>, 384 U.S. 436,(1966), the Ninth Circuit has

23   held that "a brief detention at the border by immigration and customs officials of persons presenting

24   themselves for admission to the United States is not custody, even though such persons are not free to

25   leave or to refuse to be searched." <u>United States v. Butler</u>, 249 F.3d 1094, 1098 (9th Cir.2001).

26   Consistent with that holding, in <u>Butler</u>, the Ninth Circuit held that, although the defendant was detained

27   and taken into secondary inspection while his vehicle was inspected at the border, he was not actually

28   "in custody" for the purposes of Miranda until the point at which he was placed in a holding cell. <u>See</u>

                                                17

1    Id. at 1101; cf. United States v. RRA-A, 229 F.3d 737 (9th Cir.2000) (defendant was in custody when

2    he was actually handcuffed to the bench in the secondary inspection area); United States v. Bravo, 295

3    F.3d 1002, 1010 (9th Cir. 2002) (handcuffing frisk and pat down not sufficient to constitute "custody.").

4          In Bravo, the Ninth Circuit held that the defendant was not in custody even when Bravo was

5    frisked, temporarily handcuffed, and escorted to the security office pending the outcome of the search

6    of his vehicle at a port of entry.  The agents there advised Bravo that he would be free to leave if nothing

7    was found in his vehicle.  Bravo, 295 F.3d at 1005.  Once inside the security office, Bravo was un-

8    handcuffed and allowed to wait in the office.  Id.  The Ninth Circuit reasoned that the totality of

9    circumstances would "lead a reasonable person to believe that he would be free to go once the search

10   was over and he answered any questions." Id. at 1011.

11         Similarly, in United States v. Leasure, 122 F.3d 837, 840 (9th Cir. 1997), the Ninth Circuit held

12   that the defendant  was not in custody when agents asked the defendant to shut the vehicle's motor off

13   and took the appellant's keys, and it was "immaterial whether the questioning at that stage continued

14   after [the dog] had alerted on the vehicle or not."  Leasure, 122 F.3d at 839-40.  Likewise, in United

15   States v. Doe, 219 F.3d 1009, 1014 (9th Cir. 2000), this Court held that the defendant was not in custody

16   when he was frisked and seated inside the security office.

17         The circumstances surrounding the Secondary Officer's questioning here amply demonstrate that

18   a reasonable person would, at the point Defendant made this statement, believe that she would be free

19   to go once the search of her vehicle was completed and she answered any questions.  Accordingly, the

20   Defendant's statement made during Secondary inspection should not be suppressed.

21         Nor does the Ninth Circuit's recent decision in United States v. Hernandez, 476 F.3d 791 (9th

22   Cir. 2007), bolster Defendant's cause.  In that case, the Officer at Secondary asked Defendant, "What

23   is this?" while holding a bag that the Officer believed contained drugs that was removed from

24   Defendant's pants pocket.  The court found that this questioning took place while the Defendant was

25   surrounded by six CBP Officers; had been ordered out of the vehicle; had been instructed to place his

26   hands on top of the vehicle; and had been subjected to a pat down.  Accordingly, the Ninth Circuit held

27   that, under these narrow factual circumstances, the questioning was custodial in nature and evidence of

28

1    Defendant's silence in response to the question "What is this?" should not have been admitted. Id. at

2    796. The Court ultimately, however, found this error to be harmless. Id. at 797.

3        By contrast, in this case, the Defendant had not been subjected to a pat down and was not

4    surrounded by multiple officers. Even more significantly, she was not being directly confronted with

5    physical evidence of guilt.[18/] Consequently, the Court should deny Defendant's motion to suppress her

6    statements made during Secondary inspection. Although it is not entirely clear from Defendant's motion

7    whether she seeks to suppress her post-Miranda statements as well, as detailed below, such claim would

8    have no basis.

9                **2.    Knowing, Intelligent, and Voluntary Miranda Waiver**

10       A statement made in response to custodial interrogation is admissible under Miranda v. Arizona,

11   384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the

12   statement was made after an advisement of Miranda rights, and was not elicited by improper coercion.

13   See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs

14   voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the

15   "absence of police overreaching").

16       A valid Miranda waiver depends on the totality of the circumstances, including the background,

17   experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To

18   be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature

19   of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine,

20   475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid

21   Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's

22   Miranda waiver, this Courts should analyze the totality of the circumstances surrounding the

23   interrogations. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the

24   defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc) (valid

25   waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent

26   answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal

27

28

_____

[18/]    In Hernandez, Defendant was charged with possession of the methamphetamine
contained in the package with which he was confronted by the Officer.

justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession. See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview).

Here, the ICE agents advised Defendant of her Miranda rights prior to any post-arrest custodial interrogation. As evidenced by the digital video recording, Defendant was advised of her Miranda rights before the interrogation. Defendant orally agreed to waive her Miranda rights and agreed to answer questions. Based on the totality of the circumstances, Defendant's statements should not be suppressed.

### 3.    Defendant's Statements Were Voluntary

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990).   Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, _ U.S. _, 124 S. Ct. 446 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

1       In determining the issue of voluntariness, this Court should consider the five factors under 18

2   U.S.C. § 3501(b).  United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five factors

3   include: (1) the time elapsing between arrest and arraignment of the defendant making the confession,

4   if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the

5   offense with which he or she was charged or of which he was suspected at the time of making the

6   confession, (3) whether or not such defendant was advised or knew that he or she was not required to

7   make any statement and that any such statement could be used against him, (4) whether or not such

8   defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5)

9   whether or not such defendant was without the assistance of counsel when questioned and when giving

10  such confession.  18 U.S.C. § 3501(b).  All five statutory factors under 18 U.S.C. § 3501(b) need not

11  be met to find the statements were voluntarily made.  See Andaverde, 64 F.3d at 1313.

12      As discussed above, Defendant was read her Miranda rights and explicitly stated that she

13  understood her Miranda rights and agreed to waive those rights.  See United States v. Gamez, 301 F.3d

14  1138, 1144 (9th Cir. 2002).  Defendant's statements were not the product of physical intimidation or

15  psychological pressure of any kind by any Government agent.  There is no evidence that Defendant's

16  will was overborne at the time of her statements.  Consequently, Defendant's motion to suppress her

17  statements as involuntarily given should be denied.

18          **4.        Defendant's Motion Should Be Denied With No Evidentiary Hearing**

19      This Court can and should deny (without prejudice) Defendant's motion to suppress statements

20  without an evidentiary hearing. First, under Ninth Circuit precedent as well as Southern District Local

21  Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress

22  only when the defendant adduces specific facts sufficient to require the granting of the defendant's

23  motion.  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion

24  to suppress, failed to dispute any material fact in the government's proffer.  In these circumstances, the

25  district court was not required to hold an evidentiary hearing.").

26      Second, an evidentiary hearing is not required if a defendant's motion to suppress and supporting

27  declarations or affidavits fail to allege a specific factual dispute.  See United States v. Walczak, 783 F.2d

28  852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific,

1   detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . .

2   are at issue"); see United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n

3   evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with

4   sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues

5   of fact exist."); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not

6   required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute

7   any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274

8   (S.D. Cal. 1991) (motion to suppress "akin to boilerplate motions that lay no factual foundation" and

9   unsworn representations of counsel were "too indefinite and conjectural to require the government to

10  respond").

11      Defendant failed to specifically identify the statements that she seeks to suppress or allege any

12  specific factual or legal dispute regarding the admissibility of the statements. Defendant did not allege

13  that the ICE agents failed to advise Defendant of her Miranda rights, that the Miranda rights provided

14  were somehow defective, that her Miranda waivers were not knowingly, intelligently, or voluntarily

15  made, or that the statements were involuntarily coerced. Defendant's motion to suppress lacks sufficient

16  definiteness, clarity, and specificity to enable the Court to rule or allow the Government to prepare for

17  any motion to suppress statements.

18

19      **D.      Defendant's Motion to Suppress Evidence Obtained From the Defendant's Cell
                  Phones Should Be Denied**

20      Shortly after the marijuana was found in the Defendant's vehicle and Defendant was placed

21  under arrest, two cellular telephones belonging to the Defendant – a Motorola razor phone and a

22  Motorola 1830 telephone – were searched for the limited purpose of locating recent calls made and

23  received. The Immigration and Customs Enforcement agents who responded to the scene and examined

24  the telephones prior to talking to the Defendant prepared a two-page handwritten listing that documents

25  calls made and received by those phones on the day of arrest and the day before (March 5th and 6th).

26  That search was initially made incident to the arrest in this case. Subsequently, during the post-Miranda

27  interview of the Defendant, agents secured the Defendant's consent to examine those cellular

28  telephones. That consent is contained in the post-Miranda videotaped statement that has been provided

1  to Defense counsel in this case.  Accordingly, the search of those telephones was justified as both

2  "incident to arrest" as well as by the Defendant's express consent to allow the agents to examine the

3  phones.

4      A search "incident to arrest" is an exception to the general rule against warrantless searches."

5  United States v. Hudson, 100 F.3d 1409, 1419 (9th Cir. 1996).  This exception enables "law enforcement

6  officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when

7  the search is incident to arrest."  United States v. Smith, 389 F.3d 944, 950-51 (9th Cir. 2004).  In United

8  States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007), cert. denied, 127 S.Ct. 2065 (2007), the Fifth Circuit

9  held that the district court correctly denied defendant's motion to suppress call records and text

10  messages received from the defendant's cell phone.); see also United States v. Mercedes-Nava, 486 F.

11  Supp.2d 1271, 1278-79 (D. Kan. 2007)(citing cases upholding cell phone searches incident to arrest);

12  United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996)(upholding retrieval of information from pager

13  as a search incident to arrest); United States v. Young, 2006 WL 1302667 at *13 (N.D. W. Va. May 9,

14  2006)(upholding cell phone search where evidence showed that numbers could be erased or lost when

15  phone was de-activated); Accord United States v. Arnold, No. 06-50581, 2008 WL1776525 at *4 (April

16  21, 2008)("reasonable suspicion is not needed for customs officials to search a laptop or other personal

17  electronic storage devices at the border.").  Moreover, given the possibility that the log of recent calls

18  contained on the cell phone log might be intentionally deleted or otherwise lost or destroyed – whether

19  due to new incoming calls or by other means – and the concerns of law enforcement that evidence not

20  be destroyed, the limited search of these cell phones incident to the arrest in this case was fully

21  appropriate and justified.

22      During his post-Miranda interview, Defendant was asked for and provided consent to the agents

23  to examine the telephones and the data contained therein.  Whether consent was voluntarily given "is

24  to be determined from the totality of all the circumstances."  Schneckloth v. Bustamonte, 412 U.S. at

25  227.  Here, Defendant, after voluntarily waiving his Miranda rights and, while providing a statement,

26  consented to the search of these phones.  Accordingly, on this basis as well, the limited search of these

27  cell phones was reasonable and Defendant's motion to suppress should be denied.

28

1  **E.    The Government Will Comply With Its Discovery Obligations**

2    The United States has and will continue to fully comply with its discovery obligations under

3  Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal

4  Rules of Criminal Procedure.  To date, the United States has produced 56 pages of discovery to

5  Defendant's counsel, including investigative reports and Defendant's statements.  The United States has

6  also produced a DVD of this Defendant's post-arrest interview.

7    **(1)  Defendant's Statements**

8    The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide

9  to Defendant the substance of Defendant's oral statements and Defendant's written statements.  The

10  Government has produced all of the Defendant's statements that are known to the undersigned Assistant

11  U.S. Attorney at this date.  If the Government discovers additional oral or written statements that require

12  disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

13    The Government has no objection to the preservation of the handwritten notes taken by any of

14  the agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must

15  preserve their original notes of interviews of an accused or prospective government witnesses).

16  However, the Government objects to providing Defendant with a copy of the rough notes at this time.

17  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have

18  been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582, 590 (5th

19  Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require

20  disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a

21  report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because

22  the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise

23  both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted

24  by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this

25  case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez,

26  954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where

27  notes were scattered and all the information contained in the notes was available in other forms).  The

28  notes are not Brady material because the notes do not present any material exculpatory information, or

any evidence favorable to Defendant that is material to guilt or punishment. <u>Brown</u>, 303 F.3d at 595-96 (rough notes were not <u>Brady</u> material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or <u>Brady</u>, the notes in question will be provided to Defendant.

### (2)    Arrest reports, dispatch tapes, and audio/video recordings

The Government has provided Defendant with all known reports related to Defendant's arrest in this case that are available at this time. The Government will continue to comply with its obligation to provide to Defendant all reports and audio/video recordings subject to Rule 16. As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or <u>Brady</u>. The United States is presently unaware of any dispatch tapes in connection with this case.

### (3)    Brady Material

The Government has and will continue to perform its duty under <u>Brady</u> to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under <u>Brady</u> covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. <u>See Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States v. Bagley</u>, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. <u>Bagley</u>, 473 U.S. at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

25

1    <u>Brady</u> does not, however, mandate that the Government open all of its files for discovery.  <u>See</u>

2    <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000)(<u>per</u> <u>curiam</u>).   Under <u>Brady</u>, the

3    Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see</u>

4    <u>United States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from

5    other sources (<u>see</u> <u>United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

6    defendant already possesses (<u>see</u> <u>United States v. Mikaelian</u>, 168 F.3d 380, 389-90 (9th Cir. 1999),

7    <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

8    Attorney could not reasonably be imputed to have knowledge or control over.  (<u>see</u> <u>United States v.</u>

9    <u>Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).  Nor does <u>Brady</u> require the Government "to create

10   exculpatory evidence that does not exist," <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir.

11   1980), but only requires that the Government "supply a defendant with exculpatory information of

12   which it is aware."  <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976).

### (4)    Sentencing Information

14   The United States is not obligated under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny

15   to furnish a defendant with information which she already knows.  <u>United States v. Taylor</u>, 802 F.2d

16   1108, 1118 n.5 (9th Cir. 1986).  <u>Brady</u> is a rule of disclosure, and therefore, there can be no violation

17   of <u>Brady</u> if the evidence is already known to the defendant.  In such case, the United States has not

18   suppressed the evidence and consequently has no <u>Brady</u> obligation.  <u>See</u> <u>United States v. Gaggi</u>, 811

19   F.2d 47, 59 (2d Cir. 1987).

20   But even assuming Defendant does not already possess the information about factors which

21   might affect her guideline range, the United States would not be required to provide information bearing

22   on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

23   to her sentencing date.  <u>See</u> <u>United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No

24   [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

25   remains in value.").  Accordingly, Defendant's demand for this information is premature.

### (5)    Defendant's Prior Record

27   The United States has already provided Defendant with a copy of any criminal record in

28   accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

26

1

**(6)      Proposed 404(b) and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609(b), the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at or before the time the United States' trial memorandum is filed.  The United States reserves the right to introduce as prior act evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

**(7)      Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8)      Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that are within its possession, custody, or control, and that are either material to the preparation of Defendant's defense, or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant.   The Government need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(9)      Evidence of Bias or Motive To Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant.  The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(10)      Impeachment Evidence**

The United States will comply with its discovery obligation to turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

27

1

2    **(11)** <u>**Evidence of Criminal Investigation of Any Government Witness**</u>

3        Defendants are not entitled to any evidence that a prospective witness is under criminal

4    investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

5    witnesses are not discoverable." <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976); <u>United</u>

6    <u>States v. Riley</u>, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

7    witnesses are not discoverable under Rule 16, rap sheets are not either); <u>cf.</u> <u>United States v. Rinn</u>, 586

8    F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

9    discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

10   of the Government's intended witnesses.") (citing <u>Taylor</u>, 542 F.2d at 1026).

11       The Government will, however, provide the conviction record, if any, which could be used to

12   impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

13   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

14   chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d

15   1305, 1309 (9th Cir. 1979).

16       **(12)** <u>**Evidence Affecting Perception, Recollection, Ability to Communicate**</u>

17       The United States is unaware of any evidence indicating that a prospective witness has a problem

18   with perception, recollection, communication, or truth-telling.  The United States recognizes its

19   obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach

20   Government witnesses including material information related to perception, recollection or ability to

21   communicate.  The Government objects to providing any evidence that a witness has ever used narcotics

22   or other controlled substances, or has ever been an alcoholic because such information is not

23   discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure

24   provision.

25       **(13)** <u>**Witness Addresses**</u>

26       The Government has already provided Defendant with the reports containing the names of the

27   agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case,

28   however, has no right to discover the identity of prospective Government witnesses prior to trial.  <u>See</u>

29   <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th

28

Cir 1992) (citing <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness.  "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  <u>United States v. Hsin-Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

### **(14)    Names of Witnesses Favorable to the Defendant**

As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u> and its progeny.  At the present time, the Government is not aware of any witnesses who have made an arguably favorable statement concerning the defendant.

### **(15)    Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations.  However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

### **(16)    Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks Act is (1) a written

statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).   If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

### (17)    Giglio Information

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

### (18)    Reports of Scientific Tests or Examinations

The United States is not aware of any scientific tests or examinations at this time but, if any scientific tests or examinations were conducted or are conducted in the future, the United States will provide Defendant with any reports of any such tests or examinations in accordance with Rule 16(a)(1)(F).

### (19)    Law Enforcement Personnel Files / Henthorn

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

### (20)    Informants and Cooperating Witnesses

If the Government determines that there is a confidential informant who has information that is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957) (emphasis added); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997) (same).

### (21)    Expert Witnesses

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

### (22)    Residual Request

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations.  The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

### F.    Defendant's Motion to Preserve Evidence Is Overbroad.

The United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules.  However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.  The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

### G.    Leave to File Further Motions

The United States does not oppose Defendant's request to file further motions if  based on new discovery or other information not available to Defendant at the time of this motion hearing.

### IV

### GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY

### A.    All Evidence That Defendant Intends To Introduce In Her Case-In-Chief

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to Rule 16(b)(1), requests that Defendant permit the Government to inspect, copy and photograph any and all books,

papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in her case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which she intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

### B.    Reciprocal Jencks – Statements By Defense Witnesses

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant.  The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified.  However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

1

**V.**

2

**<u>CONCLUSION</u>**

3       For the foregoing reasons, the Government respectfully requests that the Court deny

4  Defendant's motions except where unopposed and grant the United States' motion for reciprocal

5  discovery.

6       DATED: April 25, 2008

7                                              Respectfully Submitted,

8                                              KAREN P. HEWITT
                                               United States Attorney
9
                                               *s/Lawrence A. Casper*
10                                             LAWRENCE A. CASPER
                                               Assistant U.S. Attorney
11                                             Attorneys for Plaintiff
                                               United States of America
12                                             Email: lawrence.casper@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.08cr0805-W |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| YLIANA POZO-CAMPILLO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, LAWRENCE A. CASPER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of Government's Response and **Opposition to Defendant's Motions to:** (1) DISMISS INDICTMENT DUE TO UNCONSTITUTIONAL STATUTE; (2) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTIONS; (3) SUPPRESS STATEMENTS; (4) SUPPRESS CELL PHONE EVIDENCE; (5) COMPEL DISCOVERY; (6) PRESERVE EVIDENCE; and (7) GRANT LEAVE TO FILE FURTHER MOTIONS TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES AND **Government's Motion to**: COMPEL RECIPROCAL DISCOVERY together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.    Sara M. Peloquin
Attorney for Defendant
Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1.    N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2008.

_s/Lawrence A. Casper_
LAWRENCE A. CASPER