**SARA M. PELOQUIN**
California State Bar No. 254945
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
sara_peloquin@fd.org

Attorneys for Ms. Pozo-Campillo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 08CR0805-TJW |
| Plaintiff, ) | Date: July 1, 2008 |
| ) | Time: 8:30 a.m. |
| v. ) | |
| ) | MEMORANDUM OF POINTS AND |
| YLIANA POZO-CAMPILLO, ) | AUTHORITIES IN SUPPORT OF MS. POZO'S |
| ) | MOTIONS *IN LIMINE* |
| Defendant. ) | |

**I.**

**INTRODUCTION**

Ms. Pozo is charged by indictment with violating 21 U.S.C. §§ 952 and 960, Importation of Marijuana, and 21 U.S.C. §841(a)(1), possession with intent to distribute. Ms. Pozo made post-arrest statements to the arresting agents, however, she terminated the interview by invoking her Fifth Amendment rights to counsel and silence. On June 13, 2008, the government provided Ms. Pozo with notice of its intent to introduce evidence from the Treasury Enforcement Communication System (TECs) as 404(b) evidence of prior bad acts tending to show knowledge and lack of mistake in the instant case. See Exhibit A, Government Letter. page 2. The Government also provided notice of its intention to introduce the expert testimony of Forensic Chemist Fralia Martinez and Immigration and Customs Enforcement (ICE) Agent Jerry Conrad. Id. Page 3. The government expects agent Conrad to testify on the following subjects: 1) the

marijuana seized was for distribution and nor personal use, 2) the value of the marijuana seized and 3) the role and risks incurred by of couriers in the overall smuggling operation. <u>Id</u>.  These motions *in limine* follow. Other relevant background facts for her pre-trial motions were set out in a prior pleading and are incorporated by reference herein.

## II.

### IN ACCORDANCE WITH THIS COURT'S PRACTICE, COUNSELREQUESTS AN OPPORTUNITY TO VOIR DIRE THE JURY VENIRE

It is the undersigned's understanding that this court permits attorney conducted voir dire.  Defense counsel hereby requests the opportunity to personally voir dire the prospective jurors.

## III.

### EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS SHOULD BE PRECLUDED.

On June 13, 2008 Ms. Pozo received notice of some sort of the government's intention to introduce TECs as 404(b) evidence of prior acts by Ms. Pozo. The government did not, however, actually give the TECS evidence to Ms. Pozo.

Perhaps, this is because the government contends that TECS, contrary to binding Ninth Circuit precedent, does not fall within the purview of FRE 404(b) though it admits that it is would be offered to prove "knowledge, preparation, plan, participation in drug smuggling, and absence of mistake or accident," <u>see</u> Fed. R. Evid. 404(b).  TECS is plainly Rule 404(b) evidence, <u>see</u> <u>United States v. Vega,</u> 188 F3.d 1150, 1154 (9th Cir. 1999) (reversing for failing to disclose TECS (as 404(b) evidence)), and Ms. Pozo is entitled to see the actual record evidence of the supposed crossings and precisely the evidentiary theory of admissibility -- mere recitation of the laundry list of reasons set forth under Rule 404(b) is insufficient. <u>See United States v. Mehrmanesh</u>, 689 F.2d 822, 830 (9th Cir. 1982) (must articulate precise basis under Rule 404(b) for admission of evidence); <u>see also United States v. Mayans,</u> 17 F.3d at 1181 ( "[T]he government 'must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence'"); "Complete" notice is required.  <u>Vega</u>, 188 F.3d at 1152.

TECS evidence really is not relevant in this case -- Ms. Pozo's alleged prior crossings in the vehicle seized in connection with this case  are only relevant to her knowledge or participation in drug smuggling activities if they are evidence that she has engaged in crossing drugs in the past.  Mere evidence that

1  Ms. Pozo, an individual with a border crossing card, who lives near the border, in a town where many cross
2  the border into the United States, has crossed the border in the past, even in the same car is not even
3  minimally probative of knowledge of the marijuana in this case or participation in drug smuggling.  There
4  is also a risk under Rule 403 that the jurors may conclude that the government suspects Ms. Pozo of
5  importing drugs on the prior crossing occasions -- this would be an impermissible inference and that risk, in
6  and of itself, requires exclusion of this evidence.  *See* Fed. R. Evid. 404(b); 403 (if prejudice outweighs
7  probative value, evidence should be excluded.).

8  Ms. Pozo orally requested the disclosure of TECs evidence at the motion hearing on May 27, 2008.
9  To date the government has not produced any TECs records for inspection by Ms. Pozo.  In light of the
10 governments failure to produce the requested 404(b) evidence, the court should preclude its use in the
11 government's case-in-chief, or for impeachment, or rebuttal.

**IV.**

**THE COURT SHOULD PRECLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED IN DISCOVERY, AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE NOTICE REQUIREMENTS OF RULE 12(b)(4)(B).**

15 Ms. Pozo has made a number of discovery requests in this case, including for production of relevant
16 documents. See Fed. R. Crim. P. 16(a)(1)(E).  She now moves that the Court prohibit introduction at trial of
17 any documents not yet produced in discovery.  In particular, Ms. Pozo moves to preclude the use, introduction,
18 or mention of "TECS" as this material was specifically requested by Ms. Pozo.   Section (d)(2) of  Rule 16
19 allows this Court to impose sanctions when a party fails to comply with Rule 16.  Specifically, under Rule
20 16(d)(2)(C), this Court can "prohibit that party from introducing the undisclosed evidence." Furthermore,
21 pursuant to Federal Rule of Criminal procedure 12(b)(4)(B), Ms. Pozo  requests that the Court order the
22 government to provide her with prompt notice of its intention to use any discoverable evidence in its case-in-
23 chief.

**V.**

**THIS COURT SHOULD ORDER PRODUCTION OF SUPPLEMENTAL REPORTS.**

26 Defense counsel intends to inquire of the government's witnesses whether they authored any
27 supplemental reports in connection with Ms. Pozo's case.  Pre-trial disclosure will avoid unnecessary delay
28 at trial should the reports become producible under Jencks. See, e.g, 18 U.S.C. § 3500; Fed. R. Crim. P.

26.2(d). Pursuant to Rule 16 of the Federal Rules of Criminal Procedure and upon request of the defense, the government has a duty to turn over any reports in its possession that are material to the preparation of Ms. Pozo's defense. The defense requested such reports in its motion for discovery.   Ms. Pozo requests disclosure of any "supplemental reports" generated in this case. These reports generally memorialize later investigation of the case and can include information that confirms a defendant's statements made at the border. Ms. Pozo believes that any such report is discoverable under Brady and Rule 16.

## VI.

### THIS COURT SHOULD EXCLUDE ANY EXPERT TESTIMONY DESCRIBING THE STRUCTURE OF SUPPOSED DRUG SMUGGLING ORGANIZATIONS, AS IT IS IRRELEVANT, IMPROPER UNDER FRE 702 AND 703, AND UNDULY PREJUDICIAL UNDER FRE 403.

It is unclear from the government's disclosure whether the "value" agent's testimony will tread into impermissible territory of structure evidence. In this extremely straightforward and simple marijuana "border bust" trial, the government should not introduce evidence that has been deemed irrelevant and prejudicial by the Ninth Circuit. The government seeks to introduce Agent Conrad's testimony regarding the "risks" faced by "couriers" and their specific "role" in a drug smuggling operation.[1]   Using the terms "courier," "role" and "drug smuggling operation" come dangerously close the same impermissible characterizations prohibited in United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001). Under that line of authorities, "structure testimony,"    *i.e.*, testimony that a drug smuggling organization where participants, such as "courier drivers"  play certain roles is inadmissible as irrelevant and unduly prejudicial in precisely this type of case. This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is irrelevant and an abuse of discretion under FRE 401. Vallejo, 237 F.3d at 1017. The government intends to offer Agent Conrad's testimony regarding the risks faced by couriers and their role in evading law enforcement.  This testimony is improper as it compares the risks and roles of couriers to other actors in a drug smuggling network or organization.  It implies the structure which Vallejo

---

[1] The government has not given notice that it will seek to introduce expert opinion testimony on the non-existence of unknowing couriers.  Ms. Pozo would vehemently oppose such evidence, seek an opportunity to brief this issue, were it to arise, seek a continuance to retain her own expert witness and propound extensive discovery requests. She would also request a hearing outside the presence of the jury to determine the expert's qualifications and the relevance and reliability of any such testimony.

clearly precludes. The government has not charged Ms. Pozo with conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the instant offense. Any attempt to connect Ms. Pozo to a vast drug empire that has not been alleged and has not been proven violates FRE 401, 403, and Ninth Circuit case law. A motion *in limine* excluding such evidence should be granted accordingly.

Additionally, the strictures of Rule 16 or Federal Rule of Evidence 702 and 703 have not been satisfied. Ms. Pozo requests the necessary discovery of the bases for Agent Conrad's opinion and his curriculum vitae as well as pre-trial hearing under Daubert and Kumho. See United States v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002) (requiring such a hearing). The only "discovery" the government has produced regarding the proposed structure expert is a letter, dated June 13, 2008, providing the names and the barest summary of the qualifications of the "expert." The government's letter sets forth the basis for Agent Conrad's opinions in the most vague and general terms. The letter fails to set forth even a single basis for the proposed opinions and *discloses no facts, data, reports, investigatory materials, or other information underlying the so-called expert's opinions.* Cf. Fed.R.Crim.P 16(a)(1)(G) (requiring disclosure of a summary of opinion of expert and "the bases and reasons for those opinions"); Fed.R.Evid. 702 (requiring expert testimony to be "based upon sufficient facts or data." The government's inadequate notice does not constitute discovery, and the government has, in fact, provided no discovery.

The government must disclose the bases underlying its proposed expert's testimony, including "written and oral reports, tests, reports, and investigations," as well as "any [other] information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." Fed. R. Crim. Pro. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 5.

The defense seeks a bit more detail regarding Agent Conrad's experience or training qualifying him as an expert. Neither has the government has not provided the required information describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed.R.Crim.P. 16(a)(1)(G). While the government has provided a pro forma description of Agent Conrad's qualifications, which should be subjected to a Daubert hearing, the have not provided 1) agent Conrad's opinions, 2) the bases for those opinions, or 3) the reasons for those opinions. Id. Here Agent Conrad, will rely upon: his own cases, cases he assisted with, interviews with smugglers and informants, contact with undercover agents and operations, ongoing communications with fellow agents and other law enforcement personnel, literature,

publications, seminars and courses, along with formal training. Every one of the arrests, every case of his own, every interview he claims to be relying on, and every communication must be provided to defense counsel. In addition, all publications and training materials should be provided. Finally, the seminars, courses, and training should be identified.

To ensure a meaningful hearing, as well as to comply with the strictures of Rule 16, the government must provide the proper notice and discovery.

The government has provided no information regarding the "facts or data" underlying its expert's opinions, making it impossible for Ms. Pozo to investigate whether the proposed testimony is "based upon sufficient facts or data." Fed. R. Evid. 702. Finally, the government provided Ms. Pozo with no information about the "principles and methods" on which its expert has relied, let alone discovery that would allow Ms. Pozo to investigate whether "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In the end, the government's proposed "disclosure" Agent Conrad's "summarized training and work experience" does not begin to answer the key question driving the admissibility of its proposed expert's opinions: 1) What is the expert's opinion? 2) What separates the proposed expert's opinions from the opinions based on "subjective belief and unsupported speculation" that <u>Daubert</u> forbids? <u>See</u> <u>Daubert</u>, 509 U.S. at 589-90 3) How will Agent Conrad's testimony assist the jurors? Rule 702 and Supreme court case law make clear that the government will have to divulge this information to demonstrate that is expert meets the evidentiary requirements. Rule 16 requires these disclosures sooner rather than later. And until and unless the government satisfies its obligations under Federal Rule of Criminal Procedure 16, and Federal Rule of Evidence 702, the testimony must be precluded.

## VII.

## **ADMIT EVIDENCE OF PUNISHMENT**

The government has proffered that Agent Conrad will testify that couriers face the greatest risk and that this is why the simple act of bringing drugs across the border doubles the value of the drugs. If the Court is inclined to admit expert testimony by Agent Conrad regarding the risks assumed by such couriers, then the court should admit evidence of the actual risks, including punishment if caught. The government will likely argue that the nexus between the risk and the increase in value is evidence that Ms. Pozo was not an

1 unknowing courier. However, the Jury should be entitled to consider the potential punishment faced by a
2 courier, when considering this evidence of knowledge and the reasonableness of Ms. Pozo's defense that she
3 was an unknowing courier.

## VIII.

## THIS COURT SHOULD EXCLUDE POVERTY EVIDENCE

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments regarding poverty are forbidden. United States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000). Specifically, Ms. Pozo seeks to exclude references to the amount of money found on his person at the time of his arrest.

Even before the Romero-Avila case, this Circuit had concluded as much. In United States v. Mitchell, 172 F.3d 1104 (9th Cir. 1999), the defendant was convicted of bank robbery and, at trial, the prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the bank robbery. In reversing the conviction, the court stated that:

> Poverty as proof of motive has in many cases little tendency to make theft more probable. Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value.

Id. at 1108-09. To be admissible, the court stated that the poverty evidence must be accompanied by something more, such as an "unexplained, abrupt change in circumstances." Id. at 1108-09. Ninth Circuit precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and immediate financial need. See United States v. Jackson, 882 F.2d 1444, 1453 (9th Cir. 1989) (Reinhardt, J., dissenting); see also id. at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive to commit, or the commission of, a crime"); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir. 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need for money); Mitchell, 172 F.3d 1104, 1108-09 (9th Cir. 1999) (evidence of poverty, absent "an unexplained abrupt change of circumstances," is inadmissible to prove motive); United States v. Grissom, 645 F.2d 461, 469 n.11 (5th Cir. 1981) ("[I]t is almost always grossly improper for any lawyer representing the United States government to comment on the **indigency** of a defendant") (emphasis added). As such, regardless of any

1  evidence proffered by the defendant as to his financial circumstances, any reference to the defendant's
2  financial situation must be excluded.

### IX.

### THIS COURT SHOULD EXCLUDE EVIDENCE OF MS. POZO'S DEMEANOR AND THE "IMPRESSIONS" OF THE GOVERNMENT WITNESSES.

Government witnesses may opine that Ms. Pozo was nervous when she interacted with agents after she was stopped or otherwise comment on his alleged demeanor.  The defense files this motion to prevent the government's introducing this or any other demeanor evidence at trial.

**A.  Such Evidence Should Be Precluded Under Federal Rule of Evidence 403 Because Testimony That Someone Was "Nervous" Is Irrelevant and Overly Prejudicial.**

Rule 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice."  Lay witness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance.  United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) (en banc) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) ("We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see also Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" error because—"we have long been skeptical of such lay testimony"); United States v. Burks, 547 F.2d 968, 970 (6th Cir. 1976) (stating that lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity to observe" him had little value), rev'd on other grounds, 437 U.S. 1, 98 S. Ct. 2141 (1978); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a witness' "direct knowledge of the defendant is brief and superficial").[2]

---

2  In both Gall and Smith, mental state was the defense, and it was deemed error to have lay witnesses, without prior knowledge of the defendant, opine that he appeared "not nervous," Gall, 231 F.3d at 292, or that "he did not appear abnormal," Smith, 437 F.2d at 540.  Similarly, here, where a distinct mental state, knowledge, is the determinative issue, permitting witnesses without expertise and with no prior

1    The reasoning underlying the minimal significance accorded to "nervousness" is that courts recognize that "nervousness" has both an innocent and a guilty explanation because people confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong. See, e.g., Chavez-Valenzuela, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and criminals alike"); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); accord Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement); Fernandez, 18 F.3d at 879 (same).

It is well-established that jurors will assign undue weight to a law enforcement officer's testimony that an individual was "nervous" and equate nervous behavior with suspicious behavior. See, e.g., United States v. Gutierrez, 995 F.2d 169, 172 (9th Cir. 1993) (testimony of law enforcement officers "'often carries an aura of special reliability and trustworthiness,'") (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir. 1987)). It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence of law enforcement, is ambiguous. For these reasons, evidence that someone was "nervous" should fall in the same category as evidence that an individual remained silent when confronted with law enforcement accusation. That silence evidence, apart from any constitutional protection, is also inadmissible pursuant to FED. R. OF EVID. 403. United States v. Hale, 422 U.S. 171 (1975). Thus, any slight probative value which could exist is insufficient to justify its admission.

**B.    Admission of Nervousness Testimony Violates Rules 701 & 704(b).**

Admission of demeanor evidence should be excluded if it is couched in terms of a law enforcement witness' personal opinion about Ms. Pozo's behavior, i.e., "she was nervous." An inspector or agent's personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and upon a very limited observation opportunity, violates Rule 701. Rule 701 provides that a lay witness can only testify to opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to a

---

knowledge of Ms. Pozo to testify to the converse—that is, that he *was* nervous—is equally erroneous.

1  clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on
2  scientific, technical, or other specialized knowledge within the scope of Rule 702. See also Gonzalez-Rivera
3  v. INS, 22 F.3d 1441, 1447 (9th Cir. 1994) (holding that an INS agent's testimony at a suppression hearing
4  that an individual was nervous must be disregarded because it was not based upon "reliable, objective
5  evidence").

**X.**

**IF THE GOVERNMENT SEEKS TO INTRODUCE A PORTION OF MS.POZO'S POST ARREST STATEMENTS THE COURT SHOULD ADMIT THE COMPLETE STATEMENTS UNDER FRE106**

Under the Rule of Completeness, which exists in two forms: the common law version of the Rule and the portion codified at the Federal Rules of Evidence 106, the contents of the entire statement should be admitted, or none of it. The government often contends that the Rule of Completeness only covers writings, however, a number of other courts hold that:

> [w]hile Rule 106 [of the Fed. R. Evid.] applies only to writings, . . . the rule of completeness is "substantially applicable to oral testimony as well," by virtue of Fed. R. Evid. 611(a), which obligates the court to "make the interrogation and presentation effective for the ascertainment of the truth.

United States v. Mussaleen, 35 F.3d 692, 696 (2d Cir. 1994) (quoting United States v. Alvarado, 882 F.2d 645, 650 n.5 (2d Cir.), cert. denied, 493 U.S. 1071 (1989)). The Eleventh Circuit agrees that the Rule of Completeness applies to oral statements by virtue of Rule 611(a). United States v. Li, 55 F.3d 325, 329-30 (11th Cir. 1995) (citing United States v. Haddad, 10 F.3d 1252, 1258 (7th Cir. 1993)). The Ninth Circuit has cited these cases with favor. United States v. Collicott, 92 F.3d 973, 983 n.12 (9th Cir. 1996).

In applying the Rule of Completeness, courts traditionally consider several factors, including whether:

1. the entire statement explains evidence,
2. places the admitted evidence in context,
3. avoids misleading the jury, and
4. insures fair and impartial understanding of the evidence.

Li, 55 F.3d at 329-30. These factors all favor admission of the entire statement.

The government has not proffered which parts of Ms. Pozo's post-arrest statements they will seek to introduce into evidence. However, if the government attempts to introduce portions of Ms. Pozo's statements

as circumstantial evidence of a culpable mental state, then the entirety of Ms. Pozo's statements in which she denied knowledge of the marijuana in the car should be admitted. Ms. Pozo's post-arrest statements explain the evidence with respect to the contested issue of knowledge. Her complete statements provide important context to the portions the government may seek to admit. The full statements also avoid misleading the jury and insure a fair and impartial understanding of the evidence with respect to the issue of knowledge.

## XI.

### EXCLUDE AGENTS STATEMENTS OR TESTIMONY THAT MS. POZO WAS UNTRUTHFUL OR LYING.

Every portion of the post-arrest statement where government agents accuse Ms. Pozo of lying, contradicting herself or otherwise suggest he is untruthful must be excluded. The Ninth Circuit authorities are extremely well-established that credibility is solely and exclusively within the province of the jury and that no witness should be permitted to testify that another witness is lying. See, e.g., United States v. Geston, 299 F3d 1130, 1136 (9th Cir.2002); United States v. Sanchez, 176 F.3d 1214, 1220 (9th Cir. 1999); United States v. Sanchez-Lima, 161 F.3d 545, 548 (9th Cir. 1998).

## XII.

### PRECLUDE ANY MENTION OF MS. POZO'S INVOCATION OF HER RIGHT TO REMAIN SILENT AND TO COUNSEL OR OMISSIONS IN HER POST ARREST STATEMENTS.

Ms. Pozo's Fifth Amendment right against self incrimination includes the right to have no unfavorable inference drawn from her election to invoke this right. Doyle v. Ohio, 426 U.S. 610 (1976). The Ninth Circuit has held that it is impermissible to comment on omissions in post-arrest statements where the accused invoked her Fifth Amendment rights during custodial interrogation. United States v. Caruto, 526 F.3d 445 (9th Cir. 2008).

Ms. Pozo made post-arrest statements to the arresting agents, but, elected to terminate the interview by invoking her Fifth Amendment rights to silence and to counsel. Therefore, the government may not seek to impeach Ms. Pozo with omissions from her post-arrest statement nor comment in any way upon the incompleteness of her statements. This Court should preclude such questioning or commentary as an *in limine* matter.

## XIII.

## **PRECLUDE THE USE OF GUILT ASSUMING HYPOTHETICAL**

It is well-established law in this Circuit that a prosecutor's questioning of character witnesses by the use of guilt-assuming hypotheticals is error of constitutional magnitude as it compromises the presumption of innocence. United States v. Shwayder, 312 F.3d 1109, 1121 (9th Cir. 2002).

In Shwayder, the Ninth Circuit listed a plethora of authorities also concluding that asking these types of questions violate due process and the presumption of innocence. See id. (citing United States v. Guzman, 167 F.3d 1350, 1352 (11th Cir.1999) ("The government may not ... pose hypothetical questions that assume the guilt of the accused in the very case at bar."); United States v. Oshatz, 912 F.2d 534, 539 (2d Cir.1990) ("The jury might infer from the judge's permission to ask a guilt-based hypothetical question that the prosecutor has evidence of guilt beyond the evidence in the record."); United States v. McGuire, 744 F.2d 1197, 1204 (6th Cir.1984) ("It would be error to allow the prosecution to ask the character witness to assume defendant's guilt of the offenses for which he is then on trial."); United States v. Williams, 738 F.2d 172, 177 (7th Cir.1984) (Guilt-assuming hypotheticals " allow[ ] the prosecution to foist its theory of the case repeatedly on the jury and to force an unsuspecting witness to speculate on the effect of a possible conviction."); United States v. Candelaria-Gonzalez, 547 F.2d 291, 294 (5th Cir.1977) ("These hypothetical questions [strike] at the very heart of the presumption of innocence which is fundamental to Anglo-Saxon concepts of fair trial."). In Candelaria-Gonzalez, the Fifth Circuit held the mere asking of these questions alone constituted reversible error, stating: "[w]e think that the risk of prejudice to defendant's basic rights from such questions requires reversal. The questions put have no place in a criminal trial." Id. This line of questioning entirely undermines the Court's instructions to the jury at the beginning of this case that an indictment is not evidence and is not supposed to change any jurors' mind in the absence of evidence proving the contents of the indictment beyond a reasonable doubt. This Court should preclude such questions as an *in limine* matter.

## XIV.

## **THIS DEFENSE SEEKS FULL COMPLIANCE WITH THE *JENCKS* ACT**

Clearly, if a witness testified before the grand jury and the government plans to call that witness at trial, the government should have already ordered and must produce a transcript of the witness' grand jury witness' testimony following the direct examination of the witness at trial. 18 U.S.C. § 3500; Dennis v.

United States, 384 U.S. 855 (1966); FED. R. CRIM. P. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for a recess in the proceedings for defense counsel to examine the statement pursuant to Federal Rule of Criminal Procedure 26.2(d).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972). At a minimum, this court should conduct an *in camera* review of the grand jury testimony and order the transcript produced if it contains any testimony that might be Brady material or otherwise subject to production as explained above.

## XV.

## **CONCLUSION**

For the foregoing reasons, Ms. Pozo respectfully requests that this Court grant these motions *in limine*.

Respectfully submitted,

DATED: June 19, 2008                                                s/ *Sara M. Peloquin*
                                                                                  **SARA M. PELOQUIN**
                                                                                  Federal Defenders of San Diego, Inc.
                                                                                  Attorneys for Ms. Pozo-Campillo
                                                                                  sara_peloquin@fd.org