KAREN P. HEWITT
United States Attorney
W. MARK CONOVER
Assistant U.S. Attorney
California State Bar No. 236090
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5200
mark.conover@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> YLIANA POZO-CAMPILLO, <br><br> Defendant | Criminal Case No. 08cr0805-W <br><br> Date:  July 1, 2008 <br> Time:  9:00 a.m. <br><br> **GOVERNMENT'S TRIAL MEMORANDUM** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and W. Mark Conover, Assistant United States Attorney, respectfully submits the following Trial Memorandum.

**I**

**STATEMENT OF THE CASE**

**A.    INDICTMENT**

On  March 19, 2008, a federal grand jury in the Southern District of California returned a two-count Indictment charging defendant Yliana Pozo-Campillo ("Defendant") with: (i) importing approximately 49.72 kilograms (109.38 pounds) of marijuana into the United States in violation of 21 U.S.C. sections 952 and 960; and (ii)

1 possessing approximately 49.72 kilograms (109.38 pounds) of marijuana
2 with intent to distribute in violation of 21 U.S.C. Section
3 841(a)(1).  Defendant was arraigned on the Indictment on March 20,
4 2008 and pleaded not guilty.

**B.    TRIAL STATUS**

Trial is scheduled for Tuesday, July 1, 2008, at 9:00 a.m. before the Honorable Judge Thomas J. Whelan.  The United States anticipates that its case-in-chief will last one and a half days.

**C.    STATUS OF COUNSEL**

Defendant is represented by Sara Peloquin and Erica Zunkel, Federal Defenders of San Diego, Inc., appointed counsel.

**D.    CUSTODY STATUS**

Defendant is in custody.

**E.    INTERPRETER**

The United States does not need an interpreter for any of its witnesses.

**F.    JURY WAIVER**

Defendant has not waived trial by jury.

**G.    PRE-TRIAL MOTIONS**

On April 22, 2008, Defendant filed motions to: (1) Dismiss the Indictment Due to Unconstitutionality of the Statute; (2) Dismiss the Indictment for Grand Jury Violation; (3) Suppress Statements; (4) Suppress Evidence Obtained by the Unreasonable Search of the Cell Phone; (5) Compel Discovery; (6) Preserve Evidence; and (7) Grant Leave to File Further Motions.

On April 25, 2008, the Government filed a motion for reciprocal discovery.

At the May 27, 2008 motion hearing, the Court granted Defendant's motion to file further motions.  It denied the remainder of Defendant's motions.  The Court granted the Government's motion for reciprocal discovery.

**H.    STIPULATIONS**

The parties have not yet entered into any stipulations in this case.

**I.    DISCOVERY**

The United States is complying with its discovery obligations. Defendant has not provided reciprocal discovery.

**II**

**STATEMENT OF FACTS**

**A.    DEFENDANT'S APPREHENSION**

    **1.    Primary Inspection**

On March 6, 2008, at approximately 8:55 a.m., Defendant entered the United States at the Calexico West Port of Entry as the driver and sole occupant of a 1997 white Chevy Ventura mini-van bearing Baja California, Mexico license plates. During primary inspection, Customs and Border Protection Officer (CBPO) P. Ash noticed that the interior roof of the vehicle was lower than normal and sounded solid. Defendant claimed that the vehicle belonged to her husband and that her destination was Calexico.  CBPO Ash observed that Defendant appeared overly friendly. He referred Defendant and the vehicle to secondary.

    **2.    Secondary Inspection**

In the secondary lot, Defendant presented her border crossing card (DSP-150) to CBPO O. Hurtado and told him her destination was Calexico.  She again claimed the vehicle belonged to her husband and

provided a negative customs declaration. CBPO Hurtado noticed a space discrepancy in the roof of the vehicle. He observed that the interior roof was lower than normal with a gap between the top and bottom of the roof of approximately 8-10 inches. At that time, CBPO Hurtado asked that the vehicle be screened by CBP Canine Enforcement Officer C. Anzaldo using his narcotics detector dog. The dog alerted to the rear seat area in the interior of the vehicle. Upon closer inspection, CBPO Hurtado discovered 8 packages concealed in the interior roof area of the vehicle in a specially built compartment. One of the packages was probed and a sample of a green leafy substance was obtained which field tested positive for marijuana. The 8 packages had a combined weight of approximately 49.72 kilograms (109.38 pounds).

**B.   DEFENDANT YLIANA POZO'S STATEMENT**

While providing biographical data, Defendant stated that her husband, Jose Manuel Mora, was deceased. At approximately 11:07 a.m., Special Agent Lance Swanson, witnessed by Agent Joe Morquecho, advised Defendant of her <u>Miranda</u> rights in Spanish. Defendant waived her rights on videotape and agreed to provide a statement.

During her statement, Defendant claimed that she was planning a trip to the interior part of Mexico and needed new luggage. She stated that she recently purchased a 2002 Ford Winstar with U.S. license plates but had not yet registered it in Mexico. She had in her possession a key for a Ford vehicle. That morning her friend, Martin, stopped by and offered to lend her the Chevy van so that she could cross the border to buy luggage in Calexico for the trip. Defendant claimed that Martin's visit was unplanned. She stated that she did not know who owned the Chevy van. Defendant claimed that she

told Martin she was going to Food4Less, then Mervyns or Target. She also claimed that Martin took her Ford Winstar in return; she claimed that she had an extra key that she gave to him. She also claimed that they were to exchange vans at her house when she returned to Mexicali. Defendant claimed she met Martin at a bar 1-2 months earlier and that she did not know him very well. She provided a description of him, as well as his Nextel direct connect number.

Defendant denied knowledge of the marijuana and claimed she had no need to do something of this nature. When asked if she had ever ridden in the Chevy van, Defendant said "no" and then changed her answer to "one time" in Mexicali. When pressed further, she claimed she had crossed into the United States in the van one time approximately three weeks earlier and claimed that she was driving on that occasion. Upon reviewing records from the Treasury Enforcement Communication System ("TECS), Agent Swanson determined that Defendant had crossed the border in the Chevy van at least six times before her arrest. When confronted with this information, Defendant claimed she lied because she was scared and nervous. During the interview, Defendant also reiterated that her husband, whom she had earlier claimed owned the vehicle, was deceased.

**C.   DEFENDANT'S CRIMINAL HISTORY**

Defendant does not have any convictions of which the United States is aware.

/ / /

/ / /

/ / /

/ / /

## III

## **WITNESSES**

The Government reserves the right to add, omit, substitute or change the order of witnesses. Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Customs and Border Protection Officer Phillip Ash
2. Customs and Border Protection Officer Oscar Hurtado
3. Customs and Border Protection Officer Carlos Anzaldo
4. Immigration and Customs Enforcement Special Agent Lance Swanson
5. Immigration and Customs Enforcement Special Agent Jerry Conrad (value/TECs expert)
6. Fracia Martinez, DEA Forensic Chemist

## IV

## **EXHIBIT LIST**

The Government will provide a final exhibit list on the morning of trial. Presently, the Government intends to offer into evidence the following:

1. Photographs of Port of Entry
2. Photographs of Vehicle
3. Value Chart (Demonstrative Purposes Only)
4. DVD of Defendant's Post-Arrest Statement
5. Certified Transcript of Defendant's Post-Arrest Statement
6. Custody Receipt for Seized Property or Evidence
7. DEA-7 Form
8. TECs Summary Chart Illustrating Defendant's Crossings (Demonstrative Purposes Only)

9.  TECs Summary Chart Illustrating Vehicle's Crossings (Demonstrative Purposes Only)
10. Photographs of the marijuana recovered from the vehicle
11. The actual marijuana recovered from the vehicle

## V

## PERTINENT LAW

**A.  ELEMENTS OF THE CHARGED OFFENSES**

1.  <u>Title 21, United States Code Sections 952 & 960</u>

The elements for the offense of importing Marijuana are:

a.  Defendant intentionally brought marijuana into the United States; and

b.  Defendant knew that it was marijuana or some other prohibited drug.

9th Cir. Crim. Jury Instruction 9.27 (2003).

2.  <u>Title 21, United States Code, Section 841(a)(1)</u>

The elements of the offense of possessing marijuana with the intent to distribute are:

a.  Defendant knowingly possessed marijuana or some other prohibited drug in a measurable or detectable amount; and

b.  Defendant possessed marijuana with the intent to deliver it to another person.

It does not matter whether a defendant knew that the substance was marijuana. It is sufficient that a defendant knew that it was some kind of prohibited drug. *See* 9th Cir. Crim. Jury Instruction 9.13 (2003). With regard to possession, the United States notes that possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. *See* <u>United States v. Magallon-Jimenez</u>, 219 F.3d 1109, 1112-1113 (9th Cir. 2000). Moreover, a

defendant's mere possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. See United States v. Diaz Cardenas, 351 F.3d 404, 407 (9th Cir. 2003) (holding that jury could infer knowledge when an individual is the driver and sole occupant of a vehicle containing 9.48 pounds of methamphetamine (4.31 kilograms) and 17.65 pounds of cocaine (8.02 kilograms) concealed in the air bag of the vehicle); United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (finding 2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute and noting that a secret compartment within a vehicle used to conceal illegal substances can raise an inference concerning knowledge of the substance).

Knowledge may also be proved by reasonable inferences from the high street value of the narcotics. *See* United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation omitted); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) (holding that "value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute"); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the selling price of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States").

With regard to distribution/delivery, the United States may prove the "intent to deliver" element based on the following: a large quantity of contraband (United States v. Diaz Cardenas, 351 F.3d at

407); the manner in which the controlled substance was packaged (United States v. Glenn, 667 F.2d 1269, 1292 (9th Cir. 1982)); and the street value of the narcotics (United States v. Davila-Escovedo, 36 F.3d 840, 843 (9th Cir. 1994)); United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of $100,000 street value of cocaine was relevant to proving defendant's intent to distribute); United States v. Ramirez-Rodriquez, 552 F.2d 883, 885 (9th Cir. 1977) (evidence of resale value of drug probative of intent to distribute).

### B.  THE COURT SHOULD PERMIT UNITED STATES' EXPERT TESTIMONY

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial court has broad discretion to admit expert testimony. *See e.g.*, United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995). An expert may base his opinion on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

#### 1.  Value of the Marijuana and Distributable Quantity

The United States expects to present the testimony of an agent who will testify as an expert regarding the wholesale and street dollar value of the marijuana seized from the vehicle driven by Defendant. The expert will testify that the quantity of contraband seized from Defendant was far greater than a consumer would possess for personal use. The value testimony will focus on the wholesale and street values of the contraband, figures which have relevance to

Defendant's intent to distribute. *See* <u>Davila-Escovedo</u>, 36 F.3d at 843 ("A jury may infer intent to distribute from the quantity and value of the drug possessed"). The Ninth Circuit has upheld the admissibility of expert testimony as to the wholesale and retail value of drugs. *See* <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104, 1112-1113 (9th Cir. 2002).

It is expected that the expert will base his opinions on his experience investigating these types of cases, as well as his hands-on experience interrogating drug traffickers, debriefing confidential informants and discussing intelligence information with other agents. The United States has already provided defense counsel with notice of its intent to call a value expert. Consistent with the requirements of Fed. R. Crim. P. 16, the United States has provided Defendant with the name of its expert and a summary of the projected nature and scope of, as well as the basis for, this expert's testimony in anticipation of trial. The United States has also forwarded a copy of the expert's résumé. Accordingly, no basis exists for excluding the United States' expert testimony regarding the value of the contraband and that the amount found in the vehicle was a distributable quantity.

### 2. **Structure Evidence**

The United States does not intend to introduce expert testimony regarding structure in its case-in-chief. If the United States intends to present such evidence in rebuttal, it will do so consistent with <u>United States v. Vallejo</u>, 237 F.3d 1008, *as amended*, 246 F.3d 1150 (9th Cir. 2001) and <u>United States v. Valencia-Amezcua</u>, 278 F.3d 901, 909 (9th Cir. 2002). *See also* <u>United States v. Pineda-Torres</u>, 287 F.3d 860, 866 (9th Cir. 2002) ("We have held that limited drug

structure testimony is admissible in drug importation cases when the defense opens the door. . .")

### 3. **Blind Mule Testimony**

The United States may, however, elicit testimony that drug traffickers generally do not entrust large quantities of drugs to unknowing couriers or "blind mules." *See* United States v. Murillo, 255 F.3d 1169, 1176-77 (9th Cir. 2001)(unknowing drug courier testimony admissible in drug possession case to attack defendant's defense that he was "simply an unknowing courier"), *overruled in part on other grounds by* United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007); United States v. Campos, 217 F.3d 707, 712 (9th Cir. 2000)(unknowing drug courier testimony was admissible in an importation case). Expert testimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters is not drug courier profile testimony. *See* United States v. Cordoba, 104 F.3d 225, 230 (9th Cir. 1997).

### 4. **The Substance Seized Was Marijuana**

Absent a stipulation, the United States intends to introduce the testimony of DEA Chemist Fracia Martinez. It is expected that this chemist will testify that she performed various tests on the substance seized from the vehicle driven by Defendant. The chemist will testify, inter alia, that the results of these tests indicated the presence of marijuana. This chemist will base any expert opinions on her background, education, and experience, along with her knowledge and use of the accepted scientific methods used when testing unknown substances for the presence of controlled substances.

Consistent with Fed. R. Crim. P. 16, the United States has provided Defendant with the name of its DEA Chemist expert and a

summary of the projected nature and scope of, as well as the bases for, this expert's testimony. The United States has forwarded a copy of the expert's resumé. Accordingly, no basis exists for excluding the United States' expert testimony that the substance seized from the vehicle was, in fact, marijuana.

## VI

## PROPOSED VOIR DIRE

1. The Court will instruct you about the law. Will you follow the law as given by the Court and disregard any idea or notion you have about what the law is or should be?

2. The Government will be calling witnesses employed by the Department of Homeland Security, Customs and Border Protection and Immigration and Customs Enforcement. Does anyone have family members or close friends who work, or have worked, for these agencies? Would that prevent you from being fair and impartial? Does anyone have any negative views of these agencies that would prevent you from being fair and impartial?

3. Has anyone had an unpleasant or negative experience with any law enforcement personnel? Would that cause you to be biased against law enforcement?

4. Has anyone ever had any disputes with any agency of the United States Government? If so, please describe.

5. Have you or any relatives or close friends ever been accused of, or charged with, a similar crime?

6. Has anyone had any training in the law? If so, please explain.

7. Will you be able to put aside any feeling of sympathy or pity for the defendant when deciding the facts of this case?

8. Does everybody understand that a defendant is entitled to a fair trial? Does everybody understand that the United States is also entitled to a fair trial?

9. Does anybody have any moral or religious reservations that might prevent him/her from standing in judgment of other human beings?

10. The defendant in this case is charged with importation of marijuana. Does anybody have strong feelings or opinions about U.S. narcotics laws that would prevent him/her from viewing the evidence impartially?

11. The law requires the government to prove its case against the defendant beyond a reasonable doubt. If you are selected, would you want the government to prove its case by a higher standard of proof, e.g. beyond any possible doubt?

12. Certain events in this case took place at the Calexico West Port of Entry. Have any of you been sent to secondary inspection or had your vehicle searched at the Calexico West Port or another port of entry? Have any of you had any strongly positive or strongly negative experiences at the Calexico West Port or another port of entry? Do you believe that this experience might prevent you from viewing the evidence in this case impartially?

13. Is anyone here involved in criminal defense work? Does anyone have any friends or family members who are involved in criminal defense work? Is anyone here involved in law enforcement? Does anyone have any friends or family members who are involved in law enforcement?

14. Regardless of any position you may have on the legalization or criminalization of marijuana, if you become a juror in this federal trial, will you be able to follow the federal law of the United States as it presently stands and as the judge instructs you regarding the criminal importation and possession of marijuana?

## VIII

## JURY INSTRUCTIONS

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

DATED: June 25, 2008.

                                        Respectfully submitted,

                                        KAREN P. HEWITT
United States Attorney

/s/ ***W. Mark Conover***
W. Mark Conover
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Case No. 08cr0805-W |
| ) Plaintiff, ) | |
| ) | CERTIFICATE OF SERVICE |
| v. ) | |
| ) | |
| YLIANA POZO-CAMPILLO, ) | |
| ) | |
| Defendant. ) | |

**IT IS HEREBY CERTIFIED that:**

I, W. Mark Conover, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Erica Zunkel, Federal Defenders of San Diego, Inc.
1. Sara Peloquin, Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States
Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2008.

/s/ ***W. Mark Conover***
W. MARK CONOVER