1  **SARA M. PELOQUIN**
California State Bar No. 254945
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
3  San Diego, California  92101-5008
Telephone:  (619) 234-8467
4  sara_peloquin@fd.org

5  Attorneys for Ms. Pozo-Campillo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| UNITED STATES OF AMERICA, | ) Case No.: 08CR0805-TJW |
|---|---|
| Plaintiff, | ) Date: July 1, 2008 |
| | ) Time: 8:30 a.m. |
| v. | ) |
| | ) **MEMORANDUM OF POINTS AND** |
| YLIANA POZO-CAMPILLO, | ) **AUTHORITIES IN SUPPORT OF MS. POZO'S** |
| | ) **SUPPLEMENTAL *IN LIMINE* TO EXCLUDE** |
| | ) **FOREIGN DOCUMENTS AS INADMISSIBLE** |
| Defendant. | ) **"IMPEACHMENT" OF OUT-OF-COURT** |
| _____ | **STATEMENTS & UNTIMELY & RESPONSE** |
| | **TO GOVERNMENT *IN LIMINE* MOTIONS** |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY;
      PAUL STARITA, ASSISTANT UNITED STATES ATTORNEY; AND
      W. MARK CONOVER. ASSISTANT UNITED STATES ATTORNEY.

**I.**

**INTRODUCTION**

Ms. Pozo was arraigned and entered not guilty pleas to charges that she violated 21 U.S.C. §§ 952 and 960, Importation of Marijuana, and 21 U.S.C. §841(a)(1), possession with intent to distribute on March 20, 2008. As of the date of her arrest, the government has been aware that Ms. Pozo told government officials that the car she was driving belonged to her husband.  Government officials also took an unmirandized statement pursuant to interrogation, from Ms. Pozo that her husband is named Jose Manuel Mora and that

1 he is deceased. This case has been set for trial since May 27, 2008 and the trial is currently scheduled to
2 begin on July 1, 2008 (and counsel is not seeking a continuance by way of this motion).
3       On Friday, June 26, 2008, the government sent to defense counsel Spanish language (sans
4 translations) documents which purport to be some type of foreign marriage certificate between Jose Manuel
5 Mora and Ms. Pozo and a death certificate for Mr. Mora. The government apparently intends to introduce
6 these documents in its case-in-chief to impeach Ms. Pozo's out-of-court statements that the car belonged to
7 her husband. The government also seeks to introduce TECS evidence similarly to impeach out-of-court
8 statements made by Ms. Pozo (which she actually already admitted were untrue during her interrogation) that
9 she had only driven the van in which she was arrested one time previously. Since these bases for admitting
10 both the TECS crossings and the foreign documents were previously unknown to the defense, (the foreign
11 documents themselves were unknown and the TECS were recently received), this supplemental motion raises
12 legal issues relating to admissibility of both.
13       Defense counsel also briefly addresses one particularly problematic part of he government's motions
14 in limine so that the Court will know its positions and its supporting legal authorities in advance of the
15 impending trial date.

16 **II**

17 **OUT-OF-COURT STATEMENTS CANNOT BE "IMPEACHED" & MS. POZO'S CREDIBILITY IS NOT AT ISSUE UNLESS & UNTIL SHE TESTIFIES.**
18

19       The government seeks to admit these foreign documents and TECS records in its case-in-
20 chief to "impeach" Ms. Pozo's out-of-court statements and to provide the jury with specific instances
21 where she was untruthful in her statement to the agents. First, admissibility of specific instances of
22 conduct to establish that someone has been untruthful is governed by Federal Rule of Evidence 608(a)
23 and (b) which provide that evidence of untruthfulness may only be admitted after truthfulness has
24 been put at issue and it may not be proved by extrinsic evidence. *See* Fed. R. Evid. 608(a)-(b). It is
25 clear that truthfulness is only put at issue when an individual testifies. *United States v. Higginbotham*,
26 539 F.2d 17, 24 (9th Cir.1976) (once defendant takes stand and testifies on own behalf, "his
27 credibility may be impeached and his testimony assailed"). *See also McCormick on Evidence* § 33
28

1  (3d ed. 1984) (discussing techniques for attacking credibility).  Otherwise, Ninth Circuit law does
2  not permit "impeachment" of out-of-court statements.  The government has lost sight of the fact that
3  its admission of Ms. Pozo's statements is "evidence" as opposed to "testimony," thus, it cannot be
4  impeached for truthfulness.  *See id.*; *see also United States v. Behanna*, 813 F.2d 1318, 1320 (9th
5  Cir.1987) (rejecting government argument that there was evidence that the defendant's out-of-court
6  statements were false because "[n]either this court nor any other court to our knowledge, however,
7  has ever held that an out-of-court, unimpeached statement can constitute evidence of the falsity of
8  its contents").

9  It is also significant here that it is the government introducing this evidence in the first place
10 solely to impeach it.  Impeachment by contradiction is generally not permitted unless the opposing
11 party opens the door to the contradictory evidence.  *See United States v. Castillo,* 181 F.3d 1129,
12 1133 (9th Cir. 1999) (allowing impeachment with extrinsic evidence but only where defendant's
13 direct testimony invited the impeachment).  Impeachment is not permitted where it is "employed as a
14 guise for submitting to the jury substantive evidence that is otherwise unavailable." *United States v.*
15 *Peterman*, 841 F.2d 1474, 1479 (10th Cir.1988), *cert. denied,* 488 U.S. 1004(1989) (internal quotations
16 omitted); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984) (internal quotations omitted).

17 Similarly, the government's position regarding the admissibility of TECS suffers from the same
18 infirmities -- they cannot introduce extrinsic evidence to impeach nontestimonial evidence which they
19 introduced in the first place.

20                                                              **III.**

21 **UNDER APPLICABLE LAW, THE GOVERNMENT HAS NOT TIMELY PROVIDED THESE FOREIGN DOCUMENTS, THEY ARE IN SPANISH WITH NO TRANSLATIONS**
22 **& DO NOT COMPLY WITH THE RULES' REQUIREMENTS.**

23 Under 18 U.S.C. § 3505, a foreign record of regularly conducted activity must be
24 accompanied by a foreign certification in order to be admissible in a federal criminal trial. 18 U.S.C.
25 § 3505(a). "At the *arraignment or as soon after the arraignment as practicable*, a party intending
26 to offer in evidence under this section a foreign record of regularly conducted activity shall provide
27 *written notice* of that intention to each party." 18 U.S.C. § 3505(b) (emphasis supplied).  Also

28

1  according to section 3505(a)(1)(A)-(C), in order to satisfy the strictures of the hearsay rule, the
2  foreign certification must attest that: "(A) such record was made, at or near the time of the occurrence
3  of the matters set forth, by (or from information transmitted by) a person with knowledge of those
4  matters; (B) such record was kept in the course of a regularly conducted business activity; (C) the
5  business activity made such a record as a regular practice."   On June 26, 2008, well after the March
6  arraignment date, the government sent over these copies of foreign documents and a copy of a
7  foreign certification with no written notice.  The purported foreign certification states only that the
8  documents "are authorized by the laws of Mexico to be recorded or filed in the 'Registro Civil del
9  Estado,'" and that they "set forth matters that are authorized by the laws of Mexico to be reported and
10 recorded or filed." *See* Attachment A, copy of certification. The foreign certification does not attest
11 that this record was made at or near the time of the occurrence of these matters by people with
12 personal knowledge nor does it state that the particular agency involved keeps these records as part
13 of its regularly conducted business activity nor does it state that the business activity makes such a
14 record as a regular practice.  In short, the purported foreign certification is wholly deficient, there has
15 been no written notice and the Government is providing these documents well after the statutorily
16 mandated date. These documents (which won't make sense to the jury unless they speak Spanish)
17 should be excluded as they fail to comply with a federal law governing their admissibility.

18      The Mexican vehicle registration in the Spanish language suffers from the same infirmities.  The
19 untranslated document includes no certification.  The government erroneously argues in its *in limine* motions
20 that the registration is an adoptive admission.  Contrary to the governments statement of the facts in its in
21 *limine motions* Ms. Pozo never told the inspectors at the Port of Entry that she owned the vehicle.  See Govt
22 Motions *In Limine* page 14,( Clerk's Docket 25).  The government intends to offer the registration for the
23 truth of the matter asserted, specifically that the vehicle is not registered to Ms. Pozo's husband.  If the
24 government intends to offer the registration for any other purpose all information contained on the registration
25 must be redacted.  However, Ms. Pozo is prepared to stipulate that a Mexican vehicle registration was found
26 in the van and that it was not registered to her husband.

IV.

**THE RULE OF COMPLETENESS APPLIES HERE**

The government wishes to introduce only portions of Ms. Pozo's post-arrest statement where she a) says her husband's name and that he is deceased; b) where she makes inconsistent statements about driving the van across the border and her knowledge of the owner of the van, Martin. They wish to do this however, in order to have the jury infer that she has made these statements because she knows of the marijuana and was knowingly importing and possessing it. Because that inference is an unfair one when in the same statement, throughout the statement and inextricably intertwined with these other statements, Ms. Pozo repeatedly says she did not know of the marijuana, that she was not getting paid, and that she felt used by Martin.

First, under *Pennsylvania v. Muniz*, 492 U.S. 582 (1990), the Supreme Court set forth an exhaustive list of biographical questions which exempt only questions about a suspect's "name, address, height, weight, eye color, date of birth, and current age do not qualify as custodial interrogation," *id*. at 601, and that even questions occurring during a "booking" procedure will not fall within the routine booking exception if the agents have information which they know will render that particular question incriminating. *Id*. at 601-602. Here, clearly, the name of Ms. Pozo's husband and his existence is not one of the questions the Supreme Court exempted from *Miranda*. Additionally, the interrogating officials knew that this question could lead to incriminating information, thus rendering it part of the "interrogation" as opposed to the routine booking process. *See id*. Eliciting that Ms. Pozo's husband is dead and his name is inadmissible in the government's case-in-chief.[1]

Second, as to the remaining statements, they were recorded so the Rule of Completeness clearly applies. *See* Fed. R. Evid. 106. Under the Rule of Completeness and Federal Rule of Evidence 807 (residual exception), Ms. Pozo should be allowed, at the time, the government admits these statements or subsequently, on cross-examination, to elicit the statements from which the contrary, critical inference can be drawn and which explain and put into context her statements (for example, she says she didn't know about

---

[1] If Ms. Pozo elects to testify, these matters may be the subject of cross-examination but unless and until that occurs, they are inadmissible.

the marijuana but lied about her crossings because she was frightened and says that she didn't know Martin well but says she feels used, and queries whether or not he even knew about the marijuana). *See* Fed. R. Evid. 106; *United States v. Collicott*, 92 F.3d 973, 982 (9th Cir. 1996). The advisory committee notes to Rule 106 specifically provide that: "[t]he rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to some point later in the trial." Fed. R. Evid. 106, adv. comm. notes.

Even if considered "hearsay," Rule 106 does provides grounds to admit these statements -- one would not need to rely upon Rule 106 if another independent hearsay exception existed. *United States v. Sutto*, 801 F.2d 1346, 1368-69 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence . . . . "). In *Phoenix Associates II v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995), that court recognized the difference between documents admitted as an exception to the hearsay rule and those admitted, absent an exception, pursuant to Rule 106. *Id*. ("Because Ambrosini testified that he prepared the work paper each year in the regular course of preparing appellants' financial statements, and it was the regular practice of appellants' business to make such documents, the work paper was admissible as a business record.  . . . . Further, because Stone's counsel offered appellants' financial statements to establish that appellants themselves did not list a debt owed them by Stone among their assets, the work paper likewise should have been admitted for substantive purposes under Rule 106."). This case was cited with approval by the Ninth Circuit in *Collicott*, 92 F.3d at 983. *See also United States v. Pendas-Martinez*, 845 F.2d 938, 944 & n. 10 (11th Cir.1988) ("[T]here are conflicting Circuit Court decisions on whether [ Rule 106] makes admissible parts of a document that otherwise would be inadmissible under the Rules of Evidence ....") (collecting cases);  I Hon. Joseph M. McLaughlin, Hon. Jack B. Weinstein, & Margaret A. Berger, Weinstein's Fed. Evidence S 106.03[1], at 106-15 (2d ed.2001) (noting that language of  Rule 106 is ambiguous as to "whether it authorizes the admission of otherwise inadmissible evidence").

Significantly, at the time of its drafting, the government attempted to include a clause in Rule 106 requiring admission of only otherwise admissible evidence but Congress failed to include such a provision. *See* 21 Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Practice & Procedure § 5071, at 337-40 (West

1977) (noting Congress' failure to take any action in response to the Justice Department's request that a clause be added to Rule 106 to require "that evidence adduced under the Rule be otherwise admissible").

Most importantly, if evidence was admissible pursuant to another hearsay exception, there would be no need to resort to Rule 106 for admissibility.  Similarly, the fact that it would otherwise be characterized as "hearsay" does not preclude its admission if admitted under a different rule, here Rule 106. *United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case") ; *United States v. Sanchez-Robles,* 927 F.2d 1070, 1078 (9th Cir. 1991) (same).

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) does not compel a contrary result because all it provides is that Rule 106 "'does not compel admission of otherwise inadmissible hearsay evidence'" -- that is true -- Rule 106 only permits introduction of evidence "which ought in fairness to be considered contemporaneously" with other evidence. *See id.*  Second, *Ortega* did not address the argument that Rule 106 would be unnecessary unless it was intended to admit otherwise inadmissible evidence, and finally, *Ortega* did not reverse the district court's evidentiary ruling precluding cross-examination regarding the defendant's exculpatory statements because Ortega "testified to the statements himself," so the government's presentation "did not distort the meaning of Ortega's statements . . . ."     *Id*. at 683.

In *United States v. Li*, 55 F.3d 325, 329-30 (11th Cir. 1995) (*citing United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993)), that court, in applying the Rule of Completeness, discussed traditional considerations in that context, including whether:

> 1. the entire statement explains evidence,
> 2. places the admitted evidence in context,
> 3. avoids misleading the jury, and
> 4. insures fair and impartial understanding of the evidence.

*Li*, 55 F.3d at 329-30. Here, these factors all favor admission of the entire statement. The government is not entitled to present a picture of Ms. Pozo's interrogation as one where she made nothing but inculpatory admissions and then argue that these admissions mean that she knew about the marijuana while precluding evidence of her denials and explanations of these supposed inconsistencies. *See United States v. Castillo*, 14 F.3d 802, 806 (2nd Cir. 1986) (use of prior consistent statements "'is also permissible

when the consistent statement will amplify or clarify the allegedly inconsistent statement.  It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principles of completeness, though not a precise use of Rule 106) (quotation omitted).  The government should not be permitted to mislead the jury by selective excerpt from Ms. Pozo's statements.

## V.

## CONCLUSION

For the foregoing reasons, Ms. Pozo respectfully requests that this Court grant these motions *in limine*.

Respectfully submitted,

DATED: June 30, 2008         *s/ Sara M. Peloquin*
**SARA M. PELOQUIN**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Pozo-Campillo
sara_peloquin@fd.org